## SCHENCK ex rel. CHOW FOOK HONG v. WARD, Commissioner of Immigration.

### No. 5920.

District Court, D. Massachusetts.

Sept. 14, 1938.

John W. Schenck, of Boston, Mass., for plaintiff.

John A. Canavan, U. S. Atty., and Alfred G. Malagodi, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

The applicant, Chow Fook Hong, was denied permission to enter the United States upon the ground that he had not established that he was the son of Chow

Tung, deceased. The American citizenship of the alleged father Chow Tung was conceded by the Immigration authorities.

It was the contention of the petitioner that the action of the Immigration authorities was, first, arbitrary and unreasonable; second, that there had been a denial of a fair hearing; third, that there had been prejudicial error of law committed in the reception of certain evidence received and considered by the Board of Special Inquiry.

It was maintained that the Immigration officials acted unreasonably and arbitrarily in refusing to find that the relationship of Chow Fook Hong to Chow Tung was established. The witnesses produced to establish this fact were two alleged first cousins, Chow Hung Sin and Chow Hung Ping, who testified that they were sons of Chow Gum, an alleged brother of the applicant's alleged father, both of whom had been admitted to the United States as children of the above named Chow Gum, who was a native-born citizen. One of these witnesses, namely, Chow Hung Sin, was the principal sponsor and witness for Chow Fook Yuen, the applicant's alleged older brother, who applied for admission at Boston in February 1937.

Chow Fook Yuen was twice excluded at this port, his appeals were twice dismissed, and he was deported after a petition for a writ of habeas corpus had been dismissed in this Court. The testimony of Chow Hung Sin was not believed in that inquiry. There were material discrepancies between the testimony offered by Chow Hung Sin in that case and the testimony he offered in the instant case concerning the locality in which the applicant claimed his house to be situated and there were further discrepancies concerning the physical characteristics surrounding this location. There were also discrepancies between the testimony of Chow Hung Sin and his brother Chow Hung Ping concerning the location of the house in which the applicant claimed to have lived and the physical characteristics surrounding the vicinity in which it was located. There were certain discrepancies between the testimony of Chow Hung Ping and the present applicant as to the number of times they had an opportunity to see one another in China.

In addition to these discrepancies and of far more importance was other evidence discussed below upon which the Board based its finding that the applicant had not established his right to enter.

The applicant offered evidence to show he was nineteen years of age and that his alleged father was married twice; that the first wife whose name was Young Shee had died; that his father had returned to China and married the present mother of the applicant, who is living in China, and that there were three children of this second marriage, of which he was one. On the other hand, there was evidence that Young Shee had appeared at a hearing before the authorities at Seattle in July, 1933, for a return certificate for a Chinese who claimed to be the son of the applicant's alleged father and herself and at that time identified as hers a photograph that had been taken of her at the time of her admission in 1909, as also a photograph of the alleged father of this applicant, Chow Tung. On this evidence the Board found that the first wife of Chow Tung was alive in 1933 and that if Chow Tung had been married to another woman in China, the applicant, if his contention was correct that he was an issue of this marriage, was illegitimate and not entitled to enter. This alleged son seeking the return certificate at Seattle was found not to be identical with the son of Chow Tung who was admitted with Young Shee in 1909. Young Shee when sought for questioning later could not be located by the authorities.

In addition to this evidence it was shown that the applicant arrived in Boston on the same ship with one Yee Gwock Ming and another Chinese person; that Yee Gwock Ming had been detained at the Immigration Station but was later admitted. Just before Yee Gwock Ming's release from the Immigration Station, the Chairman of the Board of Special Inquiry discovered two letters in his pocket and withdrew them from it. The latter said he received these letters from one of the Chinese men detained there with him. There were only three Chinese passengers on the ship in which the applicant arrived with the said Yee Gwock Ming. These two letters were written in Chinese characters, and one of them was directed to Hom Sing Gwong, who was addressed by the writer as "Maternal Uncle," and it was signed as follows: Nephew, Goon Wee Ping, and underneath the latter name, Jew Fook Hung, the name under which the present applicant applied for admission.

It may be mentioned here that Chow Fook Hong, the applicant's name, is pronounced Jew Fook Hong. There was no objection on the part of the Chinese immigrant from whom these letters were taken against their being removed from his pocket while he was still in the custody of the Immigration officials, and it may be noted that it was contrary to the regulations of the Department of Immigration for the immigrant to have possession of these letters for the purpose of delivering them to some outside person for another detained immigrant. Although the applicant denied the authorship, the signature "Jew Fook Hung" was similar to a signature on a receipt made by the applicant upon receiving five dollars from an outside person while detained, and which the applicant admitted he had signed. In addition to this, the body of the letter showed unmistakeably, because of certain facts contained therein, that it had been written by the applicant. The letter was addressed to a "maternal uncle" and as stated above, signed by "nephew Goon Wee Ping" and underneath the latter name "Jew Fook Hung". It was addressed to Sun Lee, 62a Beach Street, Boston, Mass., with instructions that it be forwarded to Hom Sing Gwong. In this letter the writer said he did not know where his father was born and the applicant testified in the hearing that he did not know this fact. The letter also asked his maternal uncle to ask one Mr. Chin Park Dung about this and to send him some oranges if his father was born in the United States and some apples if he was born in China, and he added further that this signal ought to get by the officials. Also it gave as Chin Park Dung's address the China Travel Association, the same as that of the person or agency that sent him the five dollars which the applicant admitted he received and signed for while he was detained; and also this letter mentioned the fact he had received the five dollars. In addition to these facts which would lead to the conclusion that it was written by the applicant, there were two stamps upon the envelope in which the letter was enclosed and which the Immigration Inspector tore off, handed to the applicant which the latter accepted without comment. The Board found and there was ample evidence to support the finding that the writer of this letter was the applicant; that he had a maternal uncle in the United States and the real name of the applicant was Goon Wee Ping and not Chow (Jew) Fook Hung, son of Chow Tung. This evidence was given great weight by the Board of Special Inquiry and although no objection was made to its admissibility, but only to its weight, in the hearing before the Immigration authorities, it was seriously contended in the present hearing on the petition for a writ of habeas corpus that this evidence could not be considered in view of the fact that it was inadmissible against the applicant, and should not be considered on the ground it was in contravention of his constitutional rights granted by the Fourth Amendment to the Constitution of the United States, U.S.C.A.Const. Amend. 4.

It is well settled that aliens while in the United States are entitled to the protections of the Constitution and evidence obtained by the government in violation of a person's rights secured by the Fourth Amendment is not admissible against him in criminal proceedings. This principle of law has been extended to civil cases as well. Rogers v. U. S., 1 Cir., 97 F.2d 691, Decided June 24, 1938; Ex parte Jackson, D.C., 263 F. 110; Silverthorne Lumber Co. v. U. S., 251 U.S. 385, 40 S. Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426.

But these cases protect only the party from whom the evidence was obtained and it never was the intention of any of the decided cases to extend the protection of the Constitution in either civil or criminal cases beyond the person whose individual and personal rights were violated by the search and seizure made. The protection is a personal one and can be availed of only by the person wronged. The immigrant from whom this letter was taken made no objection to its use. Whitcombe v. U. S., 3 Cir., 90 F.2d 290; Ex parte Caminita, D.C., 291 F. 913; Tsuie Shee et al. v. Backus, 9 Cir., 243 F. 551.

An added reason why the applicant in the present case could not successfully object to the consideration of the letter in question as against him was that it is a settled principle of law that one who does not claim ownership of the property taken cannot question the legality of a search and seizure, and this applicant disclaiming ownership of the letter concerned could not complain of its admissibility and consideration of it in this case. Whitcombe v. U. S., 3 Cir., 90 F.2d 290; In re Dooley, D.C., 42 F.2d 562; Cravens v. U. S., 8

Cir., 62 F.2d 261; In re Upham's Income Tax, D.C., 18 F.Supp. 737.

The Constitutional rights of the applicant were not violated in these proceedings and the Immigration officials were clearly justified in using this evidence against the applicant.

In my view of this case there was substantial evidence to support the action of the Immigration officials; there was nothing unfair about the hearing; and there was an absence of any unreasonable or arbitrary conduct on their part. Further I can find no error of law that has been committed.

The petition is dismissed.