**UNITED STATES of America,**
**Plaintiff,**

**v.**

**PROCTER & GAMBLE COMPANY et al.,**
**Defendants.**

**Civ. A. No. 1196–52.**

United States District Court
D. New Jersey.

Dec. 10, 1959.

Supplemental Opinion Feb. 8, 1960.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., Margaret H. Brass, Antitrust Division, Department of Justice, Washington, D. C., for plaintiff.

O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., Cahill, Gordon, Reindel & Ohl, by Mathias F. Correa, New York City, for Colgate-Palmolive Co.

Bailey & Schenck, Newark, N. J., Arnold, Fortas & Porter, by Abe Fortas, Washington, D. C., for Lever Bros. Co.

Toner, Crowley, Woelper & Vanderbilt, Newark, N. J., Royall, Koegel, Harris & Caskey, by Kenneth C. Royall, New York City, Dinsmore, Shohl, Dinsmore & Todd, by Joseph C. Dinsmore, Cincinnati, Ohio, Taft, Stettinius & Hollister, by Charles Sawyer, Cincinnati, Ohio, for Procter & Gamble Co.

Davies, Richberg, Tydings, Landa & Duff, by Shelby Fitze, Washington, D. C., McCarter & English, Newark, N. J., for Association of American Soap & Glycerine Producers, Inc.

HARTSHORNE, District Judge.

In seeking to implement the opinion of our highest Court in this very case, United States v. Procter & Gamble Co., 1957, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed. 2d 1077, this Court held, in its opinion filed herein on June 9, 1959, 174 F.Supp. 233, 235 (D.C.N.J.):

"The critical question thus is, when this case first became only 'a civil case.' From that time on, our highest court has said that using the Grand Jury to elicit evidence in the case * * * would require that any advantage thus obtained improperly by the Government be wiped out, by giving the opposing party the use of so much of the Grand Jury transcript as was thus obtained by a criminal procedure in a purely civil case."

Following this defendants ascertained that while, according to the written instructions given those in charge of the Grand Jury proceedings herein, same were originally to be conducted both for criminal and civil purposes thereafter, as stated by this Court, "on November 14, 1952, the then Attorney General decided not to ask for the return of an indictment by the Grand Jury, upon the basis of the evidence previously taken before that body, "United States v. Proctor & Gamble Co., D.C.N.J., 175 F.Supp. 198, 199. Accordingly, defendants asked for, and have received, the transcript of the proceedings of the Grand Jury on and after that date until the termination of such proceedings on November 25, 1952.

However, our highest Court, in its above decision, which reversed the order for complete discovery of the Grand Jury proceedings herein by another branch of this Court, held (1) that such discovery would lie only where the plaintiff Government had used the criminal process of a Grand Jury in a purely civil proceeding; (2) as to particular Grand Jury testimony, that "a much more particularized, more discrete showing of need is necessary to establish 'good cause' " for its discovery in order to overcome the "indispensable secrecy of grand jury proceedings"; and (3) that the "delay and substantial costs" caused defendants by taking depositions "fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." *Procter*

**200**

& *Gamble,* supra, 356 U.S. at page 682, 78 S.Ct. at pages 986, 987.

■ Thus, so far as defendants may desire any additional transcript of such Grand Jury proceedings, they must show additional particularized good cause. In certain aspects this has apparently been done. Defendants have moved to be shown the transcript of the testimony of one Reilly, a witness since deceased, whose testimony is therefore unavailable to them on deposition. Barring the fact that this witness has made available to defendants a really complete memorandum of all his Grand Jury testimony, which, if subject to question, must be decided impartially, his Grand Jury testimony should therefore be made available to the defendants who desire it, in order that they be placed on a substantial parity with plaintiff.

Not content with the above aid obtained from this Court, defendants further move that (1) the entire Grand Jury transcript should be suppressed from use by plaintiff Government, not only per se, but as to any leads therefrom which the Government may have obtained; (2) all the testimony before the Grand Jury should be turned over to it; and (3) all such testimony should be impounded, including any leads which plaintiff Government might have obtained therefrom, permitting disclosure only on special cause shown.

■ In deciding if any of this additional relief is to be granted to the defendants, the prime requisite is to determine, bearing in mind the normal secrecy of Grand Jury proceedings, what will do justice to both parties—to the defendants, on the one hand, and, on the other, to the plaintiff Government, representing the public in carrying out the Congressional mandate of enforcing the antitrust acts. The fact is that over seven years ago a Grand Jury sat for a year and a half in this matter and heard some thirty witnesses, who produced literally hundreds of thousands of documents. Such evidence obviously constitutes the essential basis of the case of the plaintiff Government. Either the suppression of all this information and the leads obtained by the Government therefrom, or the impounding of all that information and those leads from the Government, will practically put an end to the Government's case, and will make it impossible for the Department of Justice to attempt to carry out the Congressional will in that regard. The only way conceivable to this Court by which such impounding could fail to prevent the Government from carrying out its duty under Section 4 of the Sherman Act, would be to have plaintiff Government again seek, on deposition, to obtain these same thirty witnesses and these same hundreds of thousands of documents. Since the Government called its first Grand Jury witness upon the basis of a lead obtained other than through the Grand Jury, it is possible that it could take the deposition of such witness and thereafter, step by step, pursue this procedure to the bitter end. But this procedure would obviously take much longer than the year and a half it took the Grand Jury over seven years ago. At each step the Government would have to prove, under the proposed impoundment procedure, that its leads as to such step did not come from its Grand Jury information but from other sources. Then, after all this, the utmost that could be expected would be that the Government would be in exactly the same position as it is now. Surely another remedy should be sought rather than any such impracticable technique. That another just remedy is available has been indicated by the Supreme Court itself in *Procter & Gamble,* supra, in holding that disclosure to the defendants, as above indicated, would meet the needs of justice, either partially, on the showing of "particularized * * * good cause" or "wholesale" to the extent that "the criminal procedure is subverted." Thereby the plaintiff, without preventing it from doing its official duty, will have been deprived of any undue advantage it has gained by taking this limited amount of evidence for a purely civil purpose before the Grand Jury rather

than in public, 15 U.S.C.A. § 30, and be compelled to place the defendants on a substantial equality with it.

Surely this is a wiser method of placing the parties on an equal basis—by making the evidence in question available to both sides—rather than by making the evidence basic to the cause unavailable to either side by its suppression or impounding, and thereby defeating the national policy as to the enforcement of the antitrust laws. There are, moreover, additional reasons why either suppression or impounding is not an appropriate remedy.

*Suppression*

■■ Suppression is generally confined as a remedy to punish the Government's violation of the Fourth Amendment to the United States Constitution, of such basic importance to the public in safeguarding it from unreasonable searches and seizures, or its equivalent in wire tapping. Silverthorne Lumber Company v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; United States v. Wallace & Tiernan Co., 1949, 336 U.S. 793, 794, 69 S.Ct. 824, 93 L.Ed. 1042; United States v. Coplon, 2 Cir., 185 F.2d 629, 636, 28 A.L.R.2d 1041, certiorari denied 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688; United States v. Goldstein, 2 Cir., 120 F.2d 485, 488, affirmed 316 U.S. 114, 120, 62 S.Ct. 1000, 86 L.Ed. 1312; Rogers v. United States, 1 Cir., 1938, 97 F.2d 691; Schenck ex rel. Chow Fook Hong v. Ward, D.C.Mass. 1938, 24 F.Supp. 776; Ex parte Jackson, D.C.Mont.1920, 263 F. 110.

As is stated in *Wallace,* supra [336 U.S. 794, 69 S.Ct. 827]:

"The Silverthorne exclusionary rule as explained in that case and others is designed to safeguard the privacy of people, and to prevent seizure of their papers and property except in compliance with valid judicial process. As tersely stated in the Silverthorne case the rule's purpose is to prevent the Fourth Amendment from being reduced to 'a form of words'."

But here there was neither a "search and seizure", a violation of the Fourth Amendment, nor a wire tapping. Everything that was done by the Government was done under judicial process, the very subpoenas used in these Grand Jury proceedings having been carefully ·delimited by Judge Forman, sitting in general charge of the Grand Jury. Hence these subpoenas, under Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, do not constitute even "a constructive search and seizure" making the Fourth Amendment applicable. Moreover, in *Wallace,* supra, where the Grand Jury itself was held invalid, our highest Court held that the plaintiff Government could use, in a civil suit, as here, the documents previously produced before this illegally constituted Grand Jury. If such evidence, though used before an illegally constituted Grand Jury, is later usable in a civil suit, a fortiori it should be available in this civil suit when used before a legally constituted Grand Jury.

■ Again, suppression is a peculiarly appropriate remedy in an unlawful search and seizure case, where disclosure of such evidence to defendants in a criminal case would do them no good at all. Here, on the other hand, the remedy of disclosure to the defendants, if due at all, would aid them in this civil suit by placing the parties on the relative equality which civil procedure requires. Thus the defendants' search and seizure argument does not suffice to require a change in the remedy already given them, to put them on a substantial equality with plaintiff.

■ Nor is the defendants' argument by analogy as to the suppression of depositions any more convincing. Of course, since a deposition may itself be used as substantive evidence in a trial, it is necessary that such deposition be taken on notice to the adversary, giving him the right to be heard and to cross-examine thereon. Thus, if such rights are not given, such deposition may be

suppressed to prevent its use as such evidence at the trial. F.R.Civ.P. 32, 28 U.S.C. However, the testimony of a witness before a Grand Jury can never be used as substantive evidence at the trial. It is there usable only to affect the credibility of a witness. The above analogy is thus a false one. In addition, the suppression sought here—to prevent the Government from any access whatever not only to that evidence but to any leads obtained therefrom—is far different and more stringent than the suppression of a deposition from use at the trial as substantive evidence, as referred to in the above Rule. This distinction is alluded to in Palmer v. Fisher, 7 Cir., 1955, 228 F.2d 603, certiorari denied Fisher v. Pierce, 1956, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485, where the Court held that the deposition would be suppressed from use as substantive evidence at the trial, but would not be destroyed, since it might thereafter become usable to impeach a trial witness, just as would testimony before a Grand Jury.

■ In short, the reasons advanced by the defendants for granting the additional relief requested, of suppression of the Grand Jury testimony and all leads obtained by the Government therefrom, would seem unsound, and such suppression, if it occurred, would here render it practically impossible for the plaintiff Government to carry out the Congressional will of effectuating the policy of the antitrust acts. To order such suppression thus would not seem to be the exercise of sound discretion on the part of the trial court, particularly in the light of the fact that the defendants have already received the aid of the Court in placing them on a substantial equality with the plaintiff Government, in accordance with the opinion of our highest Court in this very case.

*Impounding*

■ As to the impounding of all the Grand Jury testimony, much the same reasons apply, since the result of such impounding would be substantially the same as its suppression. Thereby plaintiff Government's case would have been stripped bare of its evidence, and this after over seven years of work, including the production of a large number of witnesses and literally hundreds of thousands of documents, and its compliance with the Congressional mandate of the antitrust laws would thereby be prevented.

Of course, that is not to say that the suggestion as to impounding, made in the *Procter & Gamble* concurring opinion by a single Justice, might not be a proper exercise of discretion by the trial judge, were plaintiff Government to have wilfully flouted the law from the beginning by using the Grand Jury for purely civil purposes. The possibility that that practice of the Government had been followed in this case doubtless had great weight in the making of the above suggestion. But such are not the facts in this cause as now developed. Thus the prime reason for the impounding suggestion has now been found nonexistent. Moreover, the second reason advanced—because of the finding of a "no true bill" by the Grand Jury—does not accord with the opinion of the Court itself in *Procter & Gamble*, supra, which says:

"The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case." 356 U.S. at page 684, 78 S.Ct. at page 987.

Indeed, there are certain additional reasons why impounding such evidence from the use of the Department of Justice would not be a wise exercise of discretion in this cause.

■ (a) Plaintiff Government is now rightfully entitled to at least a stenographic copy of the transcript of the Grand Jury evidence, as distinguished from its deliberations and the vote of any juror. The Grand Jury proceedings here have been presently proven to have been started for a criminal as well as a civil purpose, and to have continued in that way until within a week or so from the discharge of the Grand Jury in this case. Thus, previous to that brief terminal period, now cured by disclosure of

same to the defendants, we have a situation where "what seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case." *Procter & Gamble*, 356 U.S. at page 684, 78 S.Ct. at page 987. Such is admittedly the present reason for the holding of this transcript by the Department of Justice.

■■■ (b) Not only does this action by the attorneys for the Department of Justice thus accord with this decision of our highest Court in this very case, but it also accords with the very reason why Congress authorized the making of a stenographic transcript of Grand Jury evidence. Under the Federal Rules of Criminal Procedure—and plaintiff was here pursuing criminal procedure with this Grand Jury—" * * * a stenographer may be present while the grand jury is in session * * *" F.R.Cr.P. 6(d), 18 U.S.C. However, this had not always been the law, the Federal courts having split on the authority of a stenographer to be present during Grand Jury sessions.[1] Since, admittedly, it would help the prosecuting officer in the preparation of his case for trial to have the stenographic report of the testimony of the witnesses given before the Grand Jury, see Latham, Congress accordingly enacted a statute to that effect, 48 Stat. 58, 18 U.S.C. § 556, which amended Section 1025 of the Revised Statutes by providing for the taking of testimony before the Grand Jury by "stenographers employed in a clerical capacity to assist the district attorney or other counsel for the Government", approved May 18, 1933. That the history of this legislation is to the same effect see Sen.Rep. 64, 73rd Cong. 1st Sess., to which is appended an explanatory letter from the then Attorney General to the Chairman of the Senate Committee on the Judiciary, alluding to the District Attorney's need for this stenographic assistance. In addition, in the notes to the Federal Rules of Criminal Procedure, appearing in Sen. Doc. No. 175, 79th Cong.2d Sess., it is shown that Rule F.R.Cr.P. 6(d) is intended to cover the above statute. See also United States v. Weathers, D.C.N. D.Ga.1937, 21 F.Supp. 763. Since the Government attorney in charge of the Grand Jury has a stenographer to take this evidence to assist him in the preparation of his case for trial, the Department of Justice here clearly has the right to retain at least a copy of this transcript for that very purpose, quite regardless of whether the original transcript should, or should not, be lodged with the Clerk of the Court, since the Grand Jury itself is an arm of the Court. Cobbledick v. United States, 1940, 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783.

■■■ (c) Further, it is specifically provided by the Federal Rules of Criminal Procedure that "disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties." F.R.Cr.P. 6 (e). These duties of the Government attorneys include not only pressing indictments found by a Grand Jury, but ascertaining from the evidence presented to a Grand Jury whether criminal violations of the Sherman Act have occurred and are therefore apt to occur in the future, which should therefore be enjoined. 15 U.S.C.A. § 4.

■■■ Note that the Sherman Act is primarily a criminal statute, its first three sections declaring certain acts illegal and prescribing punishment therefor. Furthermore, while Section 4 prescribes an equitable remedy, it does not open wide the door of a court of equity to enjoin all manner of contracts, combinations in the form of trusts, or otherwise, or conspiracies or monopolies in restraint of trade. It specifically invests

1. Cf. Wilson v. United States, 2 Cir., 1916, 229 F. 344; Latham v. United States, 5 Cir., 1915, 226 F. 420.

the Federal courts with jurisdiction "to prevent and restrain violations of sections 1–7 of this title." Thus no injunction will lie save to prevent probable criminal violations of the Act. United States v. Swift, D.C.N.D.Ill.1911, 188 F. 92, 96; Standard Sanitary Manufacturing Co. v. United States, 1912, 226 U.S. 20, 52, 33 S.Ct. 9, 57 L.Ed. 107; In re Petroleum Industry Investigation, D.C. E.D.Va.1957, 152 F.Supp. 646. Hence in a Grand Jury inquiry under the Sherman Act the prime question always must be either whether criminal violations of such Act have occurred or are apt to occur in the immediate future. Since this inquiry is therefore as to criminal violations, if the use of the Grand Jury is proper at all, the above "duties" of "the attorneys for the government", as provided by the above Rule, refer to their duties in determining whether criminal violations have occurred or are apt to recur—an inquiry into criminal matters. Accordingly, under the above Rule, the disclosure of matters occurring before the Grand Jury which is to be made to the attorneys for the Government for use in the performance of their duties covers matters bearing on criminal violations, whether in the end such evidence as to such criminal violations is used as a basis for an indictment for such violations or as a basis for an injunction to prevent such violations from recurring in the future. In either event, the attorneys for the Government are entitled to such disclosure, and such disclosure to them for such purpose is no violation of the normal Grand Jury secrecy.

To this effect, see United States v. United States District Court, 4 Cir., 1956, 238 F.2d 713, certiorari denied Valley Bell Dairy Co. v. United States, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365, and In re Petroleum Industry Investigation, supra. In the first of these cases the Circuit Court reversed the District Court order which directed that, if the Grand Jury found no indictment, its transcript was to be returned by the U. S. Attorney to the Court Clerk. Thus this case held that the transcript could be used by the attorneys in charge of the Grand Jury for either civil or criminal purposes, provided it was rightfully called in the beginning for criminal purposes. To the same effect is the Petroleum Industry case [152 F.Supp. 647], where the Court said:

"Akin is the anticipated use by the Government of the documents, or the knowledge derived from them, in a civil action should the grand jury not indict. A civil suit predicated on antitrust or similar legislation, when brought by the Government, is in fact and in law a prosecution. Its aim is not compensation but correction. The obligation of the Justice Department to invoke civil remedies in an appropriate situation is just as bounden as its duty to institute requisite criminal proceedings. Consequently, if books and papers coming to the knowledge of the Government's attorneys in a grand jury investigation develop a demand, and an adequacy of proof, for resort to civil litigation in the public interest, it is certainly proper, indeed incumbent upon them, to use for that purpose the information in their hands."

Defendants argue that F.R.Cr.P. 6(e), referring to the right of the U. S. Attorneys to have disclosure of the Grand Jury transcript "in the performance of their duties" only refers to their duties in criminal proceedings, because of the reference of Rule 1 to "criminal proceedings." But this would seem an unduly restrictive construction of Rule 6(e). 'For instance, both *Procter & Gamble* and *Wallace* have held that the U. S. Attorneys could use this transcript in the conduct of this civil suit. In *Procter & Gamble,* the Court expressly said:

"The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case."

Furthermore, even as to evidence taken for a civil case only, which should thus have been taken publicly and not before a Grand Jury, Procter & Gamble recog-

nized that the "attorneys for the government" should still "use" this evidence "in the performance of their duties", only they should share its use with defendants to create civil equality in that regard. In fact, *Wallace* held that they could do so, even though the Grand Jury, of whose proceedings the transcript was made, was illegal. As *Procter & Gamble,* supra, and *Wallace,* supra, show, Rule 6(e) is not intended to be so narrowly construed.

Indeed, this situation under the Sherman Act, where civil injunction proceedings are dependent upon past and probable future criminal violations, may well constitute an important difference between the separate civil and criminal proceedings which may be taken by the Government in other situations, such as failure to live up to the tax laws. There, for instance, a criminal violation leading to an indictment is one thing. But the mere failure to pay the tax due, giving rise to a civil liability by suit or a jeopardy assessment, is an entirely different matter, in nowise dependent upon whether or not there has been a criminal violation. Due to this difference, the case of In re April 1956 Term Grand Jury, 7 Cir., 1956, 239 F.2d 263, upon which the defendants much rely, involving such a tax situation, is not helpful to them. In that case there was the strongest evidence indicating that the Grand Jury in question had been called to seek evidence, not for the purpose of indicting those subject to a tax investigation, but to turn this evidence over to the Internal Revenue agents for them to pursue their entirely separate civil remedy against such parties. In that case there was, therefore, not only a disclosure to these third party agents by those in charge of the Grand Jury, contrary to the provisions of the above court rules, but these agents were real outsiders insofar as the criminal investigation by the Grand Jury was concerned. This disclosure to third parties, if it occurred for the above purpose, thus constituted a violation of Grand Jury secrecy, calling for a remedy to be applied by the Court against the Government. But such an unlawful violation of Grand Jury secrecy has not occurred in the case at bar. This, of course, is quite outside of the fact that in this case our highest Court has already held that in this Sherman Act situation, even if there had been a subversion of the Grand Jury by using it for a purely civil purpose, the appropriate remedy was not to impound this basic evidence from the plaintiff Government, but to equalize the position of the parties by turning over so much of such testimony as was a subversion to the other side as well.

Nor do the authorities otherwise relied on by the defendants aid them. This Court has already shown the inapplicability of *In re April 1956 Term Grand Jury,* supra. As to the other cases on which the defendants rely, United States v. Byoir, D.C.N.D.Tex.1945, 58 F.Supp. 273, affirmed 5 Cir., 1945, 147 F.2d 336; Application of Bendix Aviation Corporation, D.C.S.D.N.Y.1945, 58 F.Supp. 953; United States v. Crolich, D.C.S.D.Ala. 1952, 101 F.Supp. 782; In re Bullock, D.C.D.C.1952, 103 F.Supp. 639, not a single one, save *Bendix,* involves the impounding of Grand Jury evidence from the Government, and *Bendix* involves an impounding, not against the Government, such as defendants seek, but for the benefit of the Government. Each of the other cases involves not the impounding of evidence, but the disclosure of evidence. In *Byoir,* the U. S. Attorney in the Texas District disclosed the Grand Jury evidence taken there to the U. S. Attorney in the Illinois District, resulting in Byoir's indictment there. Byoir, because of this discovery to others than those in charge of the Grand Jury, a situation not existing here, was similarly granted discovery of such evidence. In *Crolich,* the U. S. Attorney in charge of the Grand Jury proceedings, involving corrupt election practices, asked the Court to turn over the Grand Jury transcript to the local County officials, not Federal officials, which the Court refused to do. In *Bullock,* the Commissioners of the District of

Columbia asked the Court to turn over to them the Federal Grand Jury minutes covering the alleged derelictions in duty on the part of Police Inspector Bullock, and on the part of some third parties. Insofar as these other individuals were concerned, the Court refused to disclose the transcript to these Commissioners, third parties as far as the Grand Jury was concerned. But it did turn over the transcript so far as it affected the Police Inspector, on the theory that the Commissioners' responsibility for his doing his duty was good cause to breach the normal Grand Jury secrecy. Obviously, none of these authorities, dealing with disclosure of Grand Jury transcripts or the Court's refusal so to disclose, supports the impoundment sought in the case at bar. Nor does *Bendix* support the defendants. There a Grand Jury was called in the Southern District of New York to consider whether Bendix had violated the Sherman Act. No indictment having been returned, a similar civil action was instituted in the New Jersey District. When the defendant sought the return of its papers submitted to the Grand Jury, the New York court directed that they be not redelivered to the defendant, in order to "permit the Department of Justice to make prompt application to the District Court in New Jersey for an order impounding the papers which are the subject of the petition." [58 F.Supp. 954.] This stay was later effectuated by agreement of the parties and order thereon, so as to safeguard to the Government its use of these papers on the trial of the civil cause in the New Jersey District. This is the equivalent of what plaintiff Government seeks to do here in holding the Grand Jury transcript.

### Disclosure

We come now to the defendants' motion, made alternatively, to grant full disclosure of the Grand Jury testimony in lieu of suppression of such testimony.

Defendants argue (1) that they have shown prima facie that the Government has abused the Grand Jury process and that this likely occurred at the outset of the Grand Jury proceedings and therefore they are entitled to full disclosure; (2) that even if the abuse did not occur until November 14, 1952, they should be granted full disclosure as the Grand Jury proceedings are an entity, and to give meaning to the testimony subsequent to November 14, 1952, it is necessary to see the prior testimony; (3) that under the Supreme Court's opinion in this case, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) they are entitled to full disclosure whenever an abuse is discovered.

As to the first contention, the simplest answer is that the Government has clearly answered any such inference by its answer to Special Interrogatory No. 1 of July 1, 1959, dated July 20, 1959, by stating that November 14, 1952, was the date when the Attorney General decided not to seek an indictment. Furthermore, the letter of the Attorney General to Walker Smith, set forth in this Court's opinion of June 9, 1959, in the instant case, 174 F.Supp. 233, must be taken to mean what it says, barring evidence to the contrary, of which none has yet been shown.

 Since no clear evidence has been introduced by the defendants to rebut the statements described above, this argument must therefore fall. In any event, if it is later shown that the Government's decision to use the Grand Jury for solely civil purposes occurred earlier than presently believed, then, in accordance with this Court's opinions filed herein, as above, defendants will be entitled to receive the Grand Jury transcript from that day on.

 As to defendants' second argument that the disclosure to them of all the rest of the Grand Jury testimony would make clearer to them the meaning of the testimony subsequent to that of November 14, 1952, this is clearly insubstantial. As the Supreme Court has said, they can obtain this aid by deposition. The situation is not one showing a "particularized need", sufficient to lift the secrecy of Grand Jury proceedings,

*Procter & Gamble,* 356 U.S. at page 683, 78 S.Ct. at page 987.

▆▆ The defendants finally contend that once the Government has been proven to have misused the Grand Jury to take evidence in a solely civil case, as it did here for the last week or so out of the Grand Jury sessions for well over a year, there should be a disclosure to them, not simply of the testimony during the period of this misuse, but of the entire period. They argue that such is the meaning of the final sentence in *Procter & Gamble,* 356 U.S. at page 684, 78 S.Ct. at page 987:

> "It is only when the criminal procedure is subverted that 'good cause' for *wholesale* discovery and production of a grand jury transcript would be warranted."

However, the whole Court, including the dissenting Justices, apparently agree that if the Grand Jury proceedings had been *instituted* for a solely civil purpose, then, since the testimony should have been taken publicly and not privately, according to the statutory requirement, the *entire* Grand Jury transcript should be disclosed to the defendants.

> "The Court recognizes that had the Government's grand jury investigation been *instituted* solely in aid of a civil suit—that is without any thought of obtaining an indictment—the appellees would then have been entitled to see the *entire* grand jury transcript." Dissenting opinion, 356 U.S. at page 689, 78 S.Ct. at page 990. (Italics this Court's.)

On the other hand, if "the criminal procedure is subverted" at all, then *wholesale,* not *entire,* discovery of the transcript would be warranted. This allusion to *wholesale* discovery, because of the subversion of the criminal procedure, is contradistinguished by the Court in the majority opinion from its immediately preceding allusion to discovery for particularized cause shown. In short, *Procter & Gamble* holds that (a) if the Government's use of the grand jury has

been completely wrong from the beginning, the "entire Grand Jury transcript" is discoverable to the defendants without the showing of other cause; (b) but if there is a subversion by the partial unlawful use of the Grand Jury for a purely civil purpose, then that portion of the transcript is to be discovered wholesale, without the showing of other particularized cause. Finally, (c) if the testimony is properly taken before the Grand Jury, then, before the defendants are entitled to any disclosure, they must show particularized good cause. As to the defendants' motion for full disclosure of the Grand Jury testimony, this Court therefore adheres to its opinions previously referred to herein.

The motions of the defendants for suppression, for impounding, and for full disclosure, of the testimony before the Grand Jury here are therefore denied under the present proofs, save as already disclosed, and as indicated as to the deceased witness.

An order may be entered accordingly.

### Supplemental Opinion

▆ In its opinion on the use of the Grand Jury transcript, filed December 10, 1959, the Court said in the above regard:

> "Defendants have moved to be shown the transcript of the testimony of one Reilly, a witness since deceased, whose testimony is therefore unavailable to them on deposition. Barring the fact that this witness has made available to defendants a really complete memorandum of all his Grand Jury testimony, which, if subject to question, must be decided impartially, his Grand Jury testimony should therefore be made available to the defendants who desire it, in order that they be placed on a substantial parity with plaintiff."

This was to implement the decision of our highest Court in this very case, United States v. Procter & Gamble, 1958, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, where that Court, after

alluding to the "indispensable secrecy of grand jury proceedings", said that same "must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." The Court added that the mere delay and expense necessitated by taking the depositions of witnesses who had testified before the Grand Jury would not constitute such a particularized showing of "good cause." Here it should be noted preliminarily that none of the reasons basic to Grand Jury secrecy, as noted in Procter & Gamble, 356 U.S. at page 681, footnote 6, 78 S.Ct. at page 986, in its quotation from United States v. Rose, 3 Cir., 1959, 215 F.2d 617, 628–629, substantially apply. This is because, first, no indictment exists in this cause or is contemplated therein; second, the only witness whose Grand Jury testimony is sought is not a live witness, subject to importuning or tampering; third, the situation dealt with by this witness is not a current one, but involves transactions occurring years ago.

■■ We thus have before us the fortunately unusual, not to say unique, situation, where Reilly, the Grand Jury witness whose testimony is desired, is deceased, so that his deposition cannot be taken. In fact, the only means whereby the defendants can obtain discovery from him of testimony "reasonably calculated to lead to the discovery of admissible evidence [at the trial]" F.R.Civ.P. 26 (b), 28 U.S.C., is either by having this deceased witness' Grand Jury testimony turned over to the defendants for that purpose, or by turning over to them a so-called Summary of his Grand Jury testimony, which he himself gave defendant Colgate shortly after he so testified. Of course, as this Court has already stated, if this Summary is "a really complete memorandum of all his Grand Jury testimony", then discovery thereof should be made to the other defendants in justice, thereby avoiding any possible violation of the traditional secrecy of the Grand Jury. On the other hand, if such Summary is not "a really complete memorandum of all his Grand Jury testimony", to furnish this Summary to the other defendants, and not his Grand Jury testimony, would deprive these defendants of their proper discovery rights under the present unusual circumstances, and without any necessary protection of traditional Grand Jury secrecy, for the reasons above stated.

■■■ In order to answer this question as to whether or not this Summary is "a really complete memorandum of all his Grand Jury testimony", this Court has read, word by word, Reilly's complete Grand Jury testimony, taken November 6, 1952, consisting of some 138 pages, and attempted to compare it, topically as well, with the Colgate Summary of his testimony, consisting of some 51 typewritten pages. Quite irrespective of the fact that the Grand Jury testimony is over two and one-half times as long as the Summary (though it is really remarkable how much detail of his Grand Jury testimony Mr. Reilly was able to recall in his Summary), it is perfectly clear that the Summary does not include all the data included in the Grand Jury testimony. This is true in several instances dealing with one of the very crucial angles in this case, i. e., how defendant Colgate customarily reacted as to its prices when informed of contemplated price changes by its smaller competitors. Bearing in mind the fact that it will doubtless become of great importance in this case to determine whether these price changes were made simply by the law of the market place, or by preliminary informal understanding between the defendants in this cause, and bearing in mind the further fact that the witness Reilly was the Executive Vice President of defendant Colgate, in charge of its soap department, and therefore next to its President, in control of establishing its soap prices, the importance of his testimony before the Grand Jury in that regard, not covered by the Summary, can be well understood.

Not only so, but even where this practice as to such and other price changes

is covered elsewhere in the course of both the Grand Jury transcript and the Summary, the witness goes into greatest detail, referring to the trade practices and methods in that regard and uses trade terminology, the meaning of much of which is naturally beyond the present understanding of the Court. Though much of this detailed terminology appears in the Summary, some does not. Thus the Court, in dealing with all these detailed practices, methods and terms, is unable to say with any assurance whether or not some of this terminology which might appear to it to be unimportant might give those connected with the defendants and skilled in the trade a real lead as to how therefrom to obtain testimony from others which would be admissible at the trial.

Again, on another important angle, that affecting Colgate's own price mark-up, Reilly's Grand Jury testimony differs from his Summary in specific terms. Moreover, there are a number of approximations which the witness makes along various lines which differ in his Grand Jury testimony from that in his Summary.

In substance we thus have this situation:

(a) Since we here deal solely with a deceased witness, whose knowledge as to this case cannot possibly be made available to defendants on deposition, and in a case where no indictment exists or can exist, the ordinary principles as to the traditional Grand Jury secrecy are in no wise affected.

(b) The plaintiff is not dealt with unfairly, whether Reilly's Grand Jury testimony is turned over to the defendants or only his Summary. If the Summary is "a really complete memorandum of all his Grand Jury testimony", then, whichever the defendants receive, they receive essentially the same thing, and that to which they are entitled under the discovery rules.

(c) But if the Summary is not "a really complete memorandum of all his Grand Jury testimony" and the Summary only

is turned over, perchance even because of the Court's lack of understanding of the importance to defendants of the trade terminology used, then the defendants will have been denied their proper discovery rights, with possibly serious consequences.

The present unusual circumstances, therefore, in justice require that a copy of the transcript of the Grand Jury testimony of the deceased witness, James A. Reilly, taken November 6, 1952, be turned over to the defendants Proctor & Gamble and Lever.

An order may be entered accordingly.