**Edward BOLGER, Plaintiff-Appellee,**

v.

**Michael CLEARY, Defendant-Appellant.**

**No. 402, Docket 26826.**

United States Court of Appeals
Second Circuit.

Argued May 25, 1961.

Decided Aug. 4, 1961.

Irving Malchman, Asst. to Gen. Counsel, Waterfront Commission of New York Harbor, New York City (William P. Sirignano, Gen. Counsel, New York City, on the brief), for appellant.

Joseph Aronstein, New York City, for appellee.

Frank D. O'Connor, Dist. Atty., and Benj. J. Jacobson, Asst. Dist. Atty., Queens County, Long Island City, N. Y., for The New York State Dist. Attys. Assn., amicus curiae.

Before CLARK and WATERMAN, Circuit Judges, and ANDERSON, District Judge.

CLARK, Circuit Judge.

This case presents the question whether a federal court has the power to enjoin a state official from testifying in a state proceeding to information learned by him as a result of his co-operation with federal officials in an illegal search and seizure and an illegal detention.

The plaintiff, Edward Bolger, is a hiring agent and longshoreman licensed by the Waterfront Commission of New York Harbor and employed on the New York waterfront. On September 12, 1959, some federal customs enforcement officers were on the lookout for theft from the piers, and they observed the plaintiff take a cardboard carton from a deserted pier and place the carton in his car. In the course of their ensuing investigation, they searched plaintiff's New Jersey house in violation of Fed.R.Crim.P. 41, and obtained incriminating admissions from the plaintiff during a detention which violated Fed.R.Crim.P. 5(a). On the authority of Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233, the court below enjoined the various officials involved from testifying in state proceedings to the fruits of their illegal activities. To make its decree effective, the court extended the scope of the injunction to include defendant Cleary, an investigator for the Waterfront Commission of New York Harbor. D.C.S.D.N.Y., 189 F.Supp. 237. Cleary was not present at the time of the illegal search and seizure, but, at the invitation of the Customs Service, witnessed the subsequent interrogation of the plaintiff during part of his illegal detention by federal officials. Though Cleary did not participate in the questioning, he was free to do so had he wished.

The district court enjoined Cleary from testifying, in any Waterfront Commission hearing against plaintiff, with respect to transactions and statements subsequent to 11:00 a.m. on September 12, 1959 (the time that the illegal detention and illegal search and seizure began), and from producing any property illegally seized during the illegal search of plaintiff's New Jersey house. The order also enjoined Cleary from giving any testimony or producing any evidence in state criminal proceedings against the plaintiff with respect to statements obtained by federal officials during plaintiff's illegal detention. The present appeal is taken by defendant Cleary from that part of the district court order pertaining to him. The other defendants do not appeal, and Cleary concedes for purposes of his appeal the illegality of the conduct of the various federal officials.

Defendant's main point on this appeal is that the order below constitutes an unwarranted interference with the administration of criminal justice by the states. A federal court will not enjoin the use in state courts of evidence obtained by an unreasonable search by state police, Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, or obtained by state police through violation of the Anti-Wire Tapping Act, Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678. On the basis of this line of authority, defendant argues that the order below cannot be sustained. Defendant Cleary, an investigator for the Waterfront Commission of New York Harbor, is an official of a bistate agency of New York and New Jersey. The proceedings in which his testimony is forbidden are a state prosecution for petit larceny and a Waterfront Commission hearing to determine whether plaintiff's license as a hiring agent and his registration as a longshoreman should be revoked. It is urged that a consideration for the proper balance between the state and federal governments requires the federal court to stay its hand in the present case, lest the work of the state courts be unduly disrupted.

The answer to this contention is that the federal courts will make an exception to this principle of noninterference in order to insure that federal officers comply with the requirements of fair criminal law administration as set forth in the Federal Rules of Criminal Procedure. In Rea v. United States, supra, 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233, the Supreme Court directed the district court to enjoin a federal narcotics agent from testifying in a state prosecution with respect to narcotics seized by him in an illegal search. The court could assume jurisdiction in the exercise of its "supervisory powers over federal law enforcement agencies." We think the Rea case compels the conclusion that the order below was proper. In Rea, a federal official was disabled from passing the fruits of his illegal activities on to the state through testimony at trial. In the present case the federal officials attempted to pass the fruits of their illegal activities on to the state by calling in state officials at the time of the illegal detention. If the integrity of the judicial process stated in the Federal Rules of Criminal Procedure is not to be subverted by the former method, it must be similarly protected against subversion through the latter method. The only difference between the two cases is the time at which the federal officials attempt to make the results of their lawbreaking available to the state. We do not think that this difference justifies a distinction in law, or justifies so easy a means of evading federal law for the protection of the accused.

Defendant attempts to distinguish the Rea case, 350 U.S. 214, 217, 76 S.Ct. 292, 294, on the ground that, as the Supreme Court there pointed out, "no injunction [was] sought against a state official." But the defendant Cleary is not being enjoined in his capacity as a state official, but as a witness invited to observe illegal activity by federal agents. If the court can enjoin federal agents from passing on the fruits of their illegal activity to the state, the court has power to make its

**370**

decree effective by extending the injunction to any third party invited by the federal agents to witness the securing of statements or other evidence. That the third party happens also to be a state official is not, in our view, an excusing circumstance.

The defendant also seeks to distinguish Rea on the ground that there the accused, prior to the commencement of the state prosecution, had been indicted under federal law, and had obtained a suppression order under Fed.R.Crim. P. 41(e) against use of the illegally obtained evidence in that or in any other prosecution. But the majority opinion in Rea nowhere relied on the existence of the prior suppression order, or the fact that a prior federal indictment had been brought. Nor can we see any rational justification for holding that the disability from giving testimony in state proceedings, based on the need to protect the integrity of the process stated in the Federal Rules of Criminal Procedure, depends on the existence of a prior federal indictment or suppression order. Defendant contends that such a narrow construction of Rea is indicated by the recent Supreme Court decision in Wilson v. Schnettler, 365 U.S. 381, 81 S. Ct. 632, 5 L.Ed.2d 620, sustaining the dismissal of an action to enjoin federal agents from testifying in a state court and from there producing narcotics seized by them. But in Wilson the complaint failed to allege that the seizure was illegal, and this was the basic reason for the court's failure to follow Rea. While the Wilson opinion notes that Rea was different in that earlier federal proceedings had occurred, the opinion declined to rely on this fact as an independent ground for distinguishing Rea, and ultimately rested on the insufficiency of the allegations of the complaint.

We think the Rea case ample authority for holding that the order appealed from is not barred by 28 U.S.C. § 2283 as an injunction to stay proceedings in a state court.

We need now to consider whether late developments may not have rendered the injunction unnecessary. When this action was pending in the court below, plaintiff had no adequate remedy in a state court, because the then prevailing doctrine of Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L. Ed. 231, permitted the states to receive evidence obtained in an unreasonable search and seizure or in violation of a federal statute. On June 19, 1961, in Mapp v. Ohio, 81 S.Ct. 1684, the Supreme Court overruled Wolf v. People of State of Colorado, supra, and held that state courts must exclude evidence obtained in an unreasonable search and seizure. If it were clear that Mapp barred all use by the state of the illegally obtained evidence here involved, the injunction below could properly be dissolved, not so much because of federal-state relations as of the traditional principle that equity will not act where there is an adequate remedy elsewhere. The scope of Mapp is, however, unclear in several regards, such as its application to federal statutory or rule, as well as constitutional, prohibitions or to state administrative proceedings such as those of the Waterfront Commission. Moreover, it is our understanding that a rehearing of Mapp is being sought, thus leaving the question still open for some months. Hence we find no present justification for dissolving the injunction. Should the various problems left unsolved by Mapp be clarified, so that it becomes clear that the injunction is in fact unnecessary, the district court, on application of any party in interest, may order its dissolution.

Order affirmed.

ANDERSON, District Judge (dissenting).

While I agree with the majority that Judge Bryan's order should be affirmed, I am of the opinion that, as a result of the intervening decision of the Supreme Court in Mapp v. Ohio, 81 S.Ct. 1684, 1691, the injunction should now be dissolved. I must, therefore, dissent from that portion of the majority's decision which continues the injunction in effect.

The reason given in the majority opinion for not dissolving the injunction is that equity must act because there is no adequate remedy elsewhere, i. e., in this case, in the state court of New York; and the reason there is no remedy in the state court is that, while Mapp v. Ohio now requires state courts to exclude evidence obtained in violation of the unreasonable search and seizure provision of the Fourth Amendment, the Mapp case is, nevertheless, "unclear in several regards, such as its application to federal statutory or rule, as well as constitutional, prohibitions or to state administrative proceedings such as those of the Waterfront Commission." The use of the phrase "as well as constitutional" implies that Mapp is clear enough where the evidence sought to be used in a state court was obtained as the result of an unreasonable search and seizure. In any event, the opinion of the Court in the Mapp case said, "we hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." This appears to be reasonably explicit. That this is also binding upon the Waterfront Commission is implicit in the Court's discussion in the Mapp case of the protection afforded by the Fourth Amendment to the citizens' rights to privacy. It is also supported by civil cases to which the Fourth Amendment has been held to apply. Rogers v. United States, 1 Cir., 1938, 97 F.2d 691; Ex parte Jackson, D.C.D.Mont.1920, 263 F. 110; Schenck ex rel. Chow Fook Hong v. Ward, D.C.D.Mass.1938, 24 F.Supp. 776, 778; Tovar v. Jarecki, D.C.N.D.Ill. 1948, 83 F.Supp. 47. See also Silverthorne Lumber Co. v. United States, 251 U.S. 385, at page 392, 40 S.Ct. 182, 64 L. Ed. 319.

There is no question that in the present case Bolger's confession was procured through violations of Rule 5(a) F.R.Crim. P. *and* of the Fourth Amendment. Judge Bryan said, "It needs no further discussion to demonstrate that the incriminating statement was the result of a clear violation of Rule 5(a) of the Federal Rules of Criminal Procedure * * * *and of the illegal search and seizure,* and

I so find." 189 F.Supp. at page 254 (emphasis added).

As the procurement of Bolger's confession was in violation of the Fourth Amendment, the decision in Mapp v. Ohio requires the state court of New York to hold it inadmissible in evidence; Bolger, therefore, has his remedy in the state court, and the injunction issued by the court below is now unnecessary and should be dissolved.

There may be some concern lest the New York court find that the Fourth Amendment does not render the confession inadmissible here, because Cleary, the state officer, did not actually participate in the illegal search and seizure and only participated in getting the confession, by his presence, though other state agents had questioned Bolger. But it would take some lively sophistry on the evidence adduced here to find that the confession was not a fruit of the illegal search and seizure. That "fruits" are proscribed by the Mapp case is apparent from the discussion on page 1693 of 81 S.Ct. and by the references on page 1688 of 81 S.Ct. to Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; see also Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Somer v. United States, 2 Cir., 1943, 138 F.2d 790.

The reasoning of the majority seems to be that, because there is a risk that the state court may not apply Mapp to the facts of this case, and because Mapp is "unclear" as to whether or not it compels the states to follow federal statutes and rules enacted to implement and preserve constitutional rights, the doctrine of Rea v. United States, 1955, 350 U.S. 214, 76 S.Ct. 292, 293, 100 L.Ed. 233, should be extended to cover a *state official* testifying in a *state court prosecution,* to preserve the integrity of federal rules and statutes.

The Rea case stands for the proposition that the district courts have a duty to enjoin *federal law enforcement agents* from testifying in a state court prosecution concerning evidence illegally gained. This ruling was made in a case where it was perfectly clear that the federal agent, balked by the federal rules from using the

illegally gained evidence in the district court, where the evidence was suppressed, with the specific intent of using it in the state court, himself "swore to a complaint before a New Mexico judge and caused a warrant for petitioner's arrest to issue." To bring the present case within the "fall-out" area of Rea the majority say "the federal officials attempted to pass the fruits of their illegal activities on to the state by calling in state officials at the time of the illegal detention." This finding of intent and purpose was never made by the trial court. The most said by the trial court in its finding was, "The Waterfront Commission, which worked in close cooperation with the Customs Service, had been informed of Bolger's detention." 189 F.Supp. 244. Later in its discussion the trial court said, "He (Cleary) was present at the questioning as a representative of the Waterfront Commission * * * This was the result of the commendable cooperation between the Customs Service and the Commission who were both concerned with law enforcement on the waterfront," and later, "Cleary was present at the questioning by invitation of the Customs Service." Nowhere is there anything to indicate that this invitation and cooperation was part of an evil purpose of the federal agents to "attempt to pass the fruits of their illegal activities on to the state" to promote a prosecution there, which could not be carried out in the federal court. There is nothing to show that Cleary's presence came about as the result of anything more than what the Supreme Court referred to in Elkins v. United States, 364 U.S. 206, at page 211, 80 S.Ct. 1437, 1440, 4 L.Ed.2d 1669 as " * * * the entirely commendable practice of state and federal agents to cooperate with each other in the investigation and detection of criminal activity." Cleary was not present at the confession merely as a casual by-stander or as a witness or as a "human recorder"; he was a law enforcement officer of the State of New York, present in the course of his official duties.

There was good reason at the time of the issuance of the injunction by the trial court, before the Supreme Court's holding in Mapp v. Ohio, supra, to include within its reach, Cleary, the state official, to prevent a violation of Bolger's constitutional rights, for Bolger then had no other recourse. To continue it now is, in effect, saying that, though the state court is now bound to protect Bolger's rights under the Fourth Amendment, Mapp does not make it clear that the state courts are bound to protect Bolger against a violation of Rule 5(a) F.R.Crim.P., and the federal courts must, therefore, enjoin a state agent from testifying in a state court to insure the integrity of the application of that federal rule. This, to by mind, is an unwarranted invasion of the rights and powers of the states.

To attempt to base a rule on the degree or weight of the state agent's participation in a joint enforcement endeavor is wholly impractical. Either the law should be that the use in the state courts of all evidence obtained by state agents, illegally under federal rules or statutes, shall be enjoined by the district courts where, in procuring that evidence, the state agents have been assisted in whole or in part by federal agents; or the law should be that the admissibility of such evidence in the state courts shall be left wholly in the power of the state courts. The majority decision which leans toward the former principle means that in every case where there has been any degree of "commendable cooperation" between federal and state enforcement officers, and there are involved federal constitutional rights which the states must recognize, the states are also bound to recognize and apply federal statutes or rules of procedure, made to implement and preserve them, or have their state proceedings disrupted by a federal court's injunction, if they fail to do so. To require the states to follow and apply congressional enactments and the rules of the federal courts in this fashion would constitute a long step toward the destruction of the division of powers. It is directly contrary to Pugach v. Dollinger, 1961, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678.

Moreover, the practical consequence would be that in nearly all cases where there had been any contact at all between

federal and state enforcement officers, leading to a state prosecution, a question would be raised in the district courts by means of a petition for an injunction to determine whether or not such federal statutes or rules had been complied with. Meanwhile, the district court would be compelled to stay the state court proceedings until it had had an opportunity to hear and decide the matter. It takes no major prophet to envisage the "insupportable disruption" which would result. Stefanelli v. Minard, 1951, 342 U.S. 117, 123–125, 72 S.Ct. 118, 96 L.Ed. 138.

I must disagree with this extension of the holding in the Rea case. The plaintiff's rights under the Fourth Amendment must now, in the light of Mapp v. Ohio, supra, be protected by the courts of the State of New York. He has his remedy there, and the injunction issued by the federal court should now be dissolved.