[S. F. No. 20432. In Bank. Aug. 5, 1960.]

THE CHRONICLE PUBLISHING COMPANY (a Corporation) et al., Petitioners, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THE STATE BAR OF CALIFORNIA et al., Real Parties in Interest.

552

554

Cooper, White & Cooper, Sheldon G. Cooper, George A. Helmer and W. J. Dowling, Jr., for Petitioners.

No appearance for Respondent.

Victor E. Cappa, in pro. per., and Garrett H. Elmore for Real Parties in Interest.

556

BRAY, J. pro tem.*—Petitioners brought this proceeding in mandamus to compel the superior court (a) to vacate a minute order limiting the scope of a deposition, and (b) to require the State Bar and Jack A. Hayes, its secretary, to answer certain written interrogatories upon the taking of a deposition in a libel action.[1]

QUESTIONS PRESENTED

1. Is the desired information relevant?

2. Do the discovery statutes apply to nonparty witnesses?

3. Do the discovery procedures apply to a corporation?

4. (a) Are the files of the State Bar dealing with complaints concerning attorneys not resulting in public disciplinary action confidential? (b) Are the files confidential where a private reproval has resulted?

5. Did the court abuse its discretion in granting the protective order?

RECORD

Victor E. Cappa, an attorney at law, one of the real parties in interest, brought a libel action against The Chronicle Publishing Company and the other petitioners herein,[2] alleging that the Chronicle published an article about him that was false and libelous and injured him in his professional reputation and standing. He alleged that he had been admitted to practice law in this state for 32 years and that "since 1943 he has practiced law in the City and County of San Francisco and has at all times as such attorney at law conducted and demeaned himself with honesty and propriety and has never been guilty of any misconduct in his said capacity and profession as an attorney at law and has come to enjoy and did enjoy at all times hereinafter mentioned a good name and reputation as an attorney at law." This allegation was denied by the Chronicle for lack of information or belief except as to the fact that Cappa was duly admitted to practice law in this state.

In a second amended supplemental complaint Cappa alleged that after the filing of the action the Chronicle sent investi-

[1]The District Court of Appeal, First District, Division Two, denied the application for writ of mandate without opinion.

[2]For convenience petitioners, who are defendants in the libel action, will be referred to as the Chronicle. Likewise the other real parties in interest, The State Bar of California, a public corporation organized under the laws of California, and its secretary, Jack A. Hayes, will be referred to as the State Bar.

*Assigned by Chairman of Judicial Council.

gators to interview various friends and·acquaintances of his, that they reiterated the charges made in the libelous article and imputed to Cappa other wrongful conduct, and that they invaded his right of privacy by inquiring as to personal matters irrelevant to the main action.

Cappa directed a series of interrogatories to the Chronicle in which it was asked, in connection with the denial of the allegation of good name and professional reputation, if it was the Chronicle's contention that Cappa has not conducted himself with honesty and propriety and has been guilty of misconduct in his capacity as an attorney. If such was the contention, the interrogatories directed the Chronicle to state the facts on which the denial was based, when and where Cappa had been guilty of misconduct, and of what it consisted.

Responding, the Chronicle stated that the complaint made a broad allegation covering a period of 32 years and including conduct of Cappa in this state and elsewhere, that it did not have information or belief on the subject sufficient to answer the allegation and based the denial on that ground, and that it had no information to indicate that Cappa had not conducted himself with honesty and propriety or had been guilty of misconduct as an attorney. Cappa objected to these answers, contending that they were equivocal and did not squarely meet the thrust of the interrogatories. The court ruled that the answers were sufficient for the present but that the Chronicle should be prepared at the time of the pretrial conference to answer the interrogatories "yes" or "no" so that Cappa could take certain depositions.

Thereafter Cappa filed a request for admissions, asking the Chronicle to admit that at the time of the publication of the article sued on he enjoyed a good professional reputation in the community. The Chronicle replied that it was unable to admit or deny this request, that it lacked sufficient information or belief to answer, and that it had no information to indicate that Cappa did not enjoy a good professional reputation.

The Chronicle then gave notice of the taking of a deposition upon written interrogatories addressed to the State Bar and its secretary, who made a motion for an order limiting the examination by excluding inquiry into information contained in the confidential files of the State Bar.[3] Hayes' affidavit, filed in support of the motion, states that the public records

[3]The State Bar asserts that there is pending before the superior court a motion to quash the subpoena as to it on the ground that the pertinent statutes require a "witness" to be a natural person.

of the State Bar do not show that any discipline was recommended or imposed upon Cappa, and that the State Bar Board of Governors directed that opposition be made to disclosure of confidential information. The Chronicle seeks confidential information about such matters as the filing of any complaints regarding Cappa's professional conduct, the names of the complainants, if any, and the substance of such complaints; whether any investigation was conducted by the State Bar, and the substance of any information developed, with the names of persons from whom the information was received; and whether Cappa was admitted to practice in other jurisdictions, and if so, the nature of any complaints made or disciplinary action taken against him. It was urged that the matters sought to be excluded were privileged, that the public interest would suffer by disclosure and that the interrogatories were not in the proper form. The motion was granted and it was ordered that the interrogatories to which objection was made need not be answered. The interrogatories objected to and ordered not to be answered appear in the footnote.[4]

---

"'3. Have any complaints ever been lodged with the State Bar against Victor E. Cappa by any person with reference to his professional conduct as an attorney?

"4. If so, state
 (a) the date(s) and substance of such complaint(s)
 (b) the name(s) and address(es) of the complainant(s)
 (c) whether any investigation was conducted by the State Bar in connection with such complaint(s) and, if so
 (i) the substance of the information developed
 (ii) the names and addresses of the persons from whom such information was obtained
 (iii) the nature and contents of any documents examined in the course thereof.
 (d) whether any formal proceedings were conducted by the State Bar in connection with such complaint(s) and, if so
 (i) the substance of the evidence adduced
 (ii) the names and addresses of the persons who were witnesses
 (iii) the nature and content of any documents received
 (iv) the disposition of such proceedings.
 (e) whether any discipline was imposed and, if so, the nature thereof.

"5. Has the State Bar of its own motion at any time conducted any inquiry or investigation into any phase of the professional activities of Victor E. Cappa?

"6. If so, state
 (a) the date(s) of such inquiry or investigation(s)
 (b) the matters inquired into or investigated
 (c) the information developed in the course of such inquiry or investigation
 (d) the names and addresses of witnesses interviewed and
 (i) the substance of information obtained from such witnesses

## 1. *The Desired Information Is Relevant.*

Real party in interest Cappa contends that it is only his professional reputation that is in issue here, and that specific acts of misconduct, if any, would not be admissible. Hence, he contends, any information which the State Bar might have concerning him would not be relevant to this action. The Chronicle, however, contends that the specific acts of misconduct, if any, appearing in the State Bar's records would be admissible, and that in any event, such information and particularly the names of the persons giving it, reasonably might lead to the discovery of persons who might be able to testify that Cappa's reputation was not as claimed. Cappa in his complaint appeared to go further than required in a libel action when he alleged in addition to an allegation that his professional reputation is good,[5] that he "has never been guilty of any misconduct in his said capacity and profession as an attorney at law . . ."[6] The information requested is

> (e) the nature and contents of any documents examined
> (f) whether any formal proceedings were conducted by the State Bar as a result of such inquiry or investigation and, if so
>> (i) the substance of the evidence adduced
>> (ii) the names and addresses of any persons who were witnesses
>> (iii) the nature and content of any documents received
>> (iv) the disposition of such proceedings
> (g) whether any discipline was imposed or other action taken as a result of such investigation and/or proceedings.

"7. State the substance of any information disclosed by the records of the State Bar concerning the activities of Victor E. Cappa with reference to the conduct of the referral service or panel sponsored by the Lawyers Club of San Francisco.
> (a) Did the State Bar conduct any inquiry or investigation in connection therewith?
> (b) Did the State Bar take any action in connection therewith; if so
>> (i) what action?

"8. Do the records of the State Bar disclose whether Victor E. Cappa is now or was admitted to practice law in any other jurisdiction?

"9. If so, state
> (a) the dates and the jurisdiction(s)
> (b) the reason, if disclosed, for termination of the right to practice in such jurisdiction(s)
> (c) the nature of any complaints that may have been made concerning the professional conduct of Victor E. Cappa in such jurisdiction(s)
> (d) the nature and date of any disciplinary action of any type taken against Victor E. Cappa in such jurisdiction(s)."

[5]Such an allegation is required. (See *Scott* v. *Times-Mirror Co.* (1918), 178 Cal. 688, 692 [174 P. 312].)

[6]Cappa contends that this language is mere surplusage.

560

reasonably calculated to lead to the discovery of evidence of reputation, which obviously, if it exists, would be admissible.

■ Section 2016, subdivision (b), Code of Civil Procedure, provides for discovery, among other matters, of "the identity and location of persons having knowledge of relevant facts." It expressly does not limit discovery to testimony that would be admissible at a trial, for it states: "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought *appears reasonably calculated to lead to the discovery of admissible evidence . . .*" (Emphasis added.) "[T]he statute (Code Civ. Proc., § 2016, subdivision (b)) expressly provides that discovery may be had as to *any matter* which is relevant to the *subject* matter involved in the pending action, with added proviso that inadmissibility at trial is not ground for objection if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence." (*Pettie* v. *Superior Court,* 178 Cal.App.2d 680, 688 [3 Cal.Rptr. 267].) As to the new discovery procedures authorized by 1957 amendments to the Code of Civil Procedure (Stats. 1957, ch. 1904, pp. 3321-3336), "The Legislature obviously considered the discovery procedures desirable and beneficial. Their action merits liberal construction of the act by the courts." (*Grover* v. *Superior Court* (1958), 161 Cal.App.2d 644, 648 [327 P.2d 212].)

■ Cappa contends further that because bad reputation is not a defense to a libel but can only be considered in assessing general damages (see 31 Cal.Jur.2d 10), information which might lead to discovery of evidence of bad reputation is not relevant in a discovery proceeding. The contention is without merit.

■ Also specific acts, if there are any, could be used in cross-examination of Cappa if he were to testify, as he alleges in his complaint, that he has never been guilty of any misconduct as an attorney. See *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], where in a criminal case where the defendant declared that he had never committed any improper acts on any boy, it was held that as impeachment the prosecution had the right to present responsible evidence tending to contradict the defendant's statement. ■ Likewise, in cross-examining any witness testifying to Cappa's professional reputation, such witness may be asked if he had heard specific reports of misconduct, if such question is asked in good faith. ■ "In the absence of a showing of bad faith it is always within the

scope of legitimate cross-examination to ask a character witness whether he has heard the person whose reputation is under investigation accused of conduct inconsistent with the character attributed to him by the witness." (*People* v. *McKenna*, 11 Cal.2d 327, 335-336 [79 P.2d 1065].) ▮ It must be borne in mind that the Chronicle is not seeking to learn the action of the State Bar in its disciplinary procedure, but information which the State Bar has, which either in itself would be admissible or which might lead to other information which would be admissible. It is not the action of the State Bar that is being sought, but the information upon which the Board of Governors may or may not have imposed discipline.

The required information was relevant. The question then is, was it privileged?

### 2. *Nonparty Witnesses.*

▮ The discovery statutes make no distinction between a nonparty witness and a party witness. Section 2016 (the only statutory section dealing with scope of inquiry) states: "Any party may take the testimony of *any person, including a party* . . . for the purpose of discovery . . ." (Emphasis added.) Section 2020 deals with the taking of the deposition *"of any person"* upon written interrogatories. (Emphasis added.) Subdivision (d) thereof provides that after service of interrogatories, a party or *a deponent* may move the court for certain relief as therein set forth. No good reason has been advanced why the discovery procedure should not apply to nonparty witnesses. On the contrary, limiting such procedures would defeat one of the principal purposes of discovery—the doing away with the sporting theory of litigation—namely, surprise at the trial.

### 3. *Corporation.*

▮ In addition to its claim of privilege the State Bar contends that discovery by deposition cannot be compelled of a corporation.[7] Our discovery statutes refer to a "person." There is no direct reference in them to corporations. Section 17, Code of Civil Procedure, states that "the word 'person' includes a corporation as well as a natural person." Hence, if a corporation is not to be considered a "person" under the discovery statutes, it would have to be held that section 17 does not apply to those statutes. In *Southbridge Finishing Co.* v. *Golding* (1956), 2 App.Div. 430 [156 N.Y.S.2d 542], it was

---

[7]This objection, of course, does not extend to the right to examine Jack A. Hayes, Secretary of the State Bar.

held that corporations, under the New York Civil Practice Act, are "persons" who could be examined before trial as witnesses. There the plaintiff in an action for damages for goods, wares and merchandise sold and delivered and for fraud, moved to examine before trial three nonparty corporations who the plaintiff claimed had purchased goods from the defendant. The trial court denied the motion, on the ground that the term "any other person" in section 288 of the Civil Practice Act (the only authority for taking depositions before trial, other than of parties) did not include corporations. The reviewing court pointed out that there was considerable confusion on this subject among the New York courts, some holding that the term only applied to individuals, others holding that it applied to corporations as well, and others allowing examination of corporations because the right had not been called into question. This confusion, said the court, probably arose from a tendency "to label a pretrial examination of persons other than parties as an examination of witnesses ... Of course, a corporation cannot take the stand, understand the nature of an oath, reflect on questions and utter answers ...

"But there is no statutory basis for examination of any person, whether corporation or individual, in the capacity of a witness." (P. 544 [N.Y.S.2d].)

However, ". . . while there is no statutory authority to examine a corporation as a witness, there is no prohibition against examining a corporation *through* witnesses." (P. 545 [N.Y.S.2d].) The court then states: "It would make little sense to compel it [the plaintiff] to resort to the subterfuge of examining named individuals in the employ of the corporate customers, rather than the corporations themselves. Should the pretrial examination of persons other than parties be restricted only to individuals, serious difficulties would be presented. The names of the individuals with the required information might not be known, or they might be nonresidents not directly amenable to process even though their corporations had offices in New York. In many cases there would be no point in commencing the inquiry with the busy president of the corporation, only to learn that the bookkeeper or the office boy had more knowledge of the facts in issue.

"There is another consideration in favor of the examination of corporations as such, rather than of their agents in their individual capacities. It may be, as it is in the present case, that the information sought is lodged in corporate records, and that it is the records more than the personal

testimony of a witness that is required. The records should be reachable and it is more appropriate and legally fitting that they should be produced on an order of examination addressed to the corporation than on an order addressed to an individual who has no proprietorship in the records and no right to deal with or disclose them except as an agent of the corporation." (P. 547 [N.Y.S.2d].) The court points out, too, that as is the case with our discovery statutes, the Civil Practice Act itself calls for a liberal construction and holds that each of the three corporations could be examined, as being within the compass of the term "any other person" in the act.

Another interesting case on the same subject is *Sherman* v. *Hoffman* (1959), 19 Misc.2d 895 [192 N.Y.S.2d 214]. There the plaintiff, a former school teacher, sued a principal for libel and slander, claiming that the defendant made false statements as to her mental condition and capacity to perform her duties. Because of such statement the New York City Board of Education caused medical examinations to be made of her by the board's physicians. To obtain the results of these examinations, the plaintiff moved the court for an examination, before trial, of the board. The board took the position it was not a "person" under section 288 of the Civil Practice Act (the same section interpreted in *Southbridge Finishing Company, supra*). Quoting from *City of Buffalo* v. *Hannah Furniture Corp.*, 305 N.Y. 369, 376 [113 N.E.2d 520, 524] " '. . . there is no basis or warrant for concluding that the statute does not apply to an officer, agent or employee of such an entity as a corporation, or the state or any *civil subdivision* thereof,' " the court held that "a municipal corporation is no more exempt from examination as a witness where 'special circumstances render it proper' than any other person." (P. 216 [N.Y.S.2d].)

It is true that the State Bar acts "as an arm of the court, for the purpose of taking evidence and making its recommendations," and that the method of disciplinary procedure provided in the State Bar Act is " 'alternative and cumulative' " to the power of the Supreme Court to itself conduct disciplinary proceedings (*Johnson* v. *State Bar*, 4 Cal.2d 744, 758 [52 P.2d 928] ), and that the State Bar's recommendations are merely advisory in character (see *Palmquist* v. *State Bar*, 43 Cal.2d 428, 435 [274 P.2d 640] ). There is nothing in these facts that derogates against the State Bar and its officers being "public officer[s]" under section 1881, subdivision 5, Code of Civil Procedure.

The Chronicle calls attention to the fact that the grand jury has been held to be an "arm of the court," performing a "judicial function" and grand jurors to be "judicial offi-. cers." It then argues that as the Legislature has provided for access by a defendant in a criminal proceeding to the testimony before the grand jury when originally he was not entitled to it (see *People* v. *Tinder*, 19 Cal. 539 [81 Am.Dec. 77]) and that as the State Bar, like the grand jury, has been referred to as "an arm of the court,"[8] the State Bar is not placed "beyond the scope of legislative control—specifically here with respect to judicial process in the course of litigation." Obviously the State Bar is not beyond legislative control (it actually is a creation of the Legislature). It is not clear how this argument meets the situation with which we are dealing. It has not been contended that the Legislature could not provide that the proceedings of the State Bar are not privileged. The point here is that it has not done so. Its legislation on discovery expressly limits discovery to "any matter, *not privileged* . . ." (Code Civ. Proc., § 2016, subd. (b); emphasis added.) The question then is, was it privileged?

4. *State Bar Files Confidential.*

(a) *Where no discipline is imposed.*

All parties concede that where complaints made to the State Bar concerning attorneys result in disciplinary action such complaints and the matters connected therewith are not confidential and are open to the public. Therefore, the discussion herein will not appertain to them.

The State Bar contends that the information sought is confidential and privileged, and that in any event, the ruling of the court limiting the depositions was proper under rule 8, State Bar Rules of Procedure, and under section 2019, Code of Civil Procedure.[9]

Section 2016, subdivision (b), Code of Civil Procedure, states, in part: "Unless otherwise ordered by the court as provided by subdivision (b) or (d) of Section 2019 of this code, the deponent may be examined regarding any matter, not

---

[8] Actually, the grand jury has been referred to as "an appendage of the court" exercising "judicial functions," and its members as "officers of the court." (*In re Gannon* (1886), 69 Cal. 541 [11 P. 240].) It also has been referred to as a "judicial tribunal." (*Greenberg* v. *Superior Court* (1942), 19 Cal.2d 319, 323 [121 P.2d 713].)

[9] The State Bar also contends that the interrogatories are burdensome and too broad. Our determination of the other contentions makes it unnecessary to consider this contention.

privileged, which is relevant to the subject matter involved in the pending action . . . including the . . . identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure.''

The Chronicle asserts that in California privileges are statutory, citing Witkin, California Evidence (1958) page 446, where it is said: ''It is also generally declared that no new or common law privilege can be recognized in the absence of express statutory provision. (See 8 Wigmore, § 2286.) And 'A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself . . .' (C.C.P. 2065; see also C.C.P. 1879 . . . ; C.C.P. 2064 . . . ; see 8 Wigmore, § 2192 et seq.)'' ▮ The burden of establishing that the evidence is within the terms of the statute is upon the party asserting the privilege. (*Tanzola* v. *De Rita,* 45 Cal.2d 1, 6 [285 P.2d 897] ; *Dwelly* v. *McReynolds,* 6 Cal.2d 128, 131 [56 P.2d 1232].) Here the claim of privilege is based primarily on section 1881 of the Code of Civil Procedure which provides: ''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . . 5. A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure.''

▮ The State Bar is a public corporation invested with extremely broad powers in connection with the investigation of complaints and the conduct of formal and informal disciplinary proceedings; it is managed by members of the profession who are public officers. (Bus. & Prof. Code, § 6001.) ▮ That the Legislature considered the State Bar as at least akin to a state public body or agency and hence its officers as ''public officers'' is illustrated by the last paragraph of section 6001, where it appears that the Legislature felt the necessity of providing that laws prescribing procedures for state bodies, agencies or classes, did not apply to the State Bar, thus indicating that the Legislature considered the State Bar in their category: ''No law of this State restricting or prescribing a mode of procedure for the exercise of powers of

*state public bodies or state agencies, or classes thereof* ... shall be applicable to the State Bar, unless the Legislature expressly so declares." (Emphasis added.) ▓ The State Bar "has been provided by legislative enactment as an arm of this court for the purpose of assisting in matters of admission and discipline . . ." (*Preston* v. *State Bar,* 28 Cal.2d 643, 650 [171 P.2d 435]; *In re Lacey,* 11 Cal.2d 699, 701 [81 P.2d 935].) ▓ The State Bar Act "sets up an institution controlled and managed by the members of the profession *who are public officers* acting under oath without compensation and *functioning as an arm or branch of this court* in the matter of admissions, reinstatements and discipline of attorneys at law." (*Herron* v. *State Bar* (1931), 212 Cal. 196, 199 [298 P. 474]; emphasis added.) ▓ As pointed out (pp. 199-200) the act provides that the board shall have power to " '. . . administer oaths and affirmations, . . . compel the attendance of witnesses and the production of books, papers and documents . . .' In fact, the preliminary investigation is an inquiry by *officers of this court* . . ." (Emphasis added.) In *Werner* v. *Hearst Publications, Inc.,* 65 Cal.App.2d 667, 671 [151 P.2d 308], the court said concerning the local administrative committee of the State Bar: "It is presumed that the members of the committee, *being public officers,* regularly performed their duty . . ." (Emphasis added.) ▓ Thus the Board of Governors of the State Bar and its secretary not only come within the spirit of section 1881 but actually are "public officer[s] " within its terms.

Section 1881, Code of Civil Procedure, *supra,* provides privilege for a public officer "as to communications made to him in official confidence, when the public interest would suffer by the disclosure." ▓ Hayes' affidavit states generally that the requested information would require disclosures of confidential communications. Additionally it states that a report, which was received from the National Conference of Bar Examiners about 1940 when Cappa applied for admission to practice in this state, was secured upon the express understanding that the information it contained was confidential and had been obtained on that basis. The affidavit further states that the free communication of information on a privileged, confidential basis, is necessary for the proper functioning of the disciplinary procedures, and secondly, for the protection of individual members of the bar from unwarranted attacks and accusations. We agree with these statements. ▓ "[T]he legal profession is a profession and not a

trade, and . . . the basic ideal of that profession is to render service and secure justice for those seeking its aid.'' (*Mayer* v. *State Bar* (1934), 2 Cal.2d 71, 74 [39 P.2d 206].) ▮ ''The State Bar Act is designed to provide a procedure whereby those attorneys at law who prove recreant to their trust must be removed from the ranks of the profession. The public, as well as the legal profession and the courts must be protected from those who do not measure up to their responsibilities. Government largely depends upon the stability of the courts and, to a considerable extent, upon the integrity of the members of the legal profession. The purpose of disbarment proceedings is not to punish the individual but to determine whether the attorney should continue in that capacity.'' (*Dudney* v. *State Bar* (1937), 8 Cal.2d 555, 563 [66 P.2d 1199].) ▮ ''The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . .'' (*Cox* v. *Delmas* (1893), 99 Cal. 104, 123 [33 P. 836].)

The procedure evolved by the State Bar is well adapted to provide reasonable protection for both the public and the members of the bar. ▮ The State Bar will accept a complaint from any member of the public who feels, whether rightly or wrongly, that he has been aggrieved by the action of the attorney, or feels interested in complaining about an attorney, no matter how informally made the complaint may be. (See *Herron* v. *State Bar, supra,* 212 Cal. 196, holding that such complaints need not be verified.) These complaints are confidential unless they result in disciplinary action taken against the attorney. Many such complaints found to be unfounded are never brought to the attention of the attorney involved. ▮ This procedure acts as a safety valve for the public. It thereby is made to feel that the law profession is not a closed body which protects its members no matter how unfaithful to their trusts any might be, and which would punish a member of the public who makes an unfounded charge by disclosure of his name and his charge. Although the vast majority of the charges made against attorneys are by disgruntled clients and completely without foundation,[10] and are so found by the State Bar, such complainants are some-

[10]According to the report of the President of the State Bar, in the year 1958-1959 there were 1,311 complaints, of which about half were deemed worthy of consideration by preliminary investigating committees, and notices to show cause were issued in only 44 of the cases. (34 State Bar Journal, 803, 811-812.)

what satisfied by the fact that they have had their day before the tribunal.

*Markwell* v. *Sykes* (1959), 173 Cal.App.2d 642 [343 P.2d 769], has some bearing on the question we are considering. There the plaintiff brought an action for slander based on alleged false statements concerning the manner in which she operated a rest home, made by the defendant to one of the deputies in the Department of Social Welfare of Los Angeles County, which department licensed rest homes. Prior to trial the defendant attempted to take the deposition of the deputy who claimed that communications made to her as such were confidential. Thereafter the matter was referred to the court which held that the matter was not privileged and the deputy testified by deposition concerning the statements made to her by the defendant. At the trial the court refused to allow the testimony as being privileged under section 1881, subdivision 5, Code of Civil Procedure (communications to a public officer).

The reviewing court stated (p. 647) : "The privilege is for the benefit of the state . . . or its agencies and the cloak of testimonial immunity is thrown only around such public officials. . . . [T]he existence of a privilege in the state presents a question for the court . . ." The court then quoted from *State* ex rel. *Douglas* v. *Tune*, 199 Mo.App. 404 [203 S.W. 465], which discussed the question of privilege in a libel suit upon a complaint similar to the one there. "At page 467 [203 S.W.] it is said : 'The creation of the board, in itself and in a measure, invites complaints from citizens of their officers and of public employes. If every citizen who knows of the unfitness of an officer or employe, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and become of the public records, so that any one may have access to it and be subjected to action for a possible libel. It is not to be expected, if that is so, that very many will come forward and lodge a complaint. We think that if it was understood that the complaints lodged by citizens against these employes were to become public property, without the consent of the party filing them, that the very object for which this board is created would be defeated. It may be that in sealing the records, so far as relates to these complaints, from public inspection, some individual will be hurt, but the right of that individual must yield to the right and to the benefit of the public at large. In our opinion these communications by citizens to the complaint

board, covering the conduct of public officers and employes, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated.' To the same effect see *Runyon* v. *Board etc. of Calif.*, 26 Cal. App.2d 183, 184 [79 P.2d 101].'' This language applies equally to the protection of citizens complaining to the State Bar concerning claimed misconduct of attorneys at law. The procedure and its confidential character is a great protection to the lawyer. He is not exposed to publicity where groundless charges are made. In some of the cases, the charges are so meritless that the attorney is not contacted for his explanation. The fact that a charge has been made against an attorney, no matter how guiltless the attorney might be, if generally known, would do the attorney irreparable harm even though he be cleared by the State Bar.

The principle applicable to the State Bar records in disciplinary proceedings has been applied to a number of state agencies and boards. It is well stated in *Runyon* v. *Board etc. of Calif.* (1938), 26 Cal.App.2d 183, 184 [79 P.2d 101]. The court, in holding that communications to the State Board of Prison Terms and Paroles in connection with the determination of applications for parole of prisoners were held to be confidential in spite of section 1032, Political Code, which said: '' 'The public records *and other matters* in the office of any officer, are at all times . . . open to inspection of any citizen of this state' '' (emphasis added) stated: ''. . . the courts have consistently declared that . . . public policy demands that certain communications and documents shall be treated as confidential and therefore are not open to indiscriminate inspection, notwithstanding that they are in the custody of a public officer or board and are of a public nature. (23 R.C.L. pp. 160-163.) Included in this class are documents and records kept on file in public institutions, concerning the condition, care and treatment of the inmates thereof, and the files in the offices of those charged with the execution of the laws relating to the apprehension, prosecution and punishment of criminals. (23 R.C.L. p. 161.) And it would seem quite clear that the letters and documents here sought to be inspected fall within the class last mentioned because it is a matter of common knowledge that in order to impartially and intelligently discharge the functions of the state board of prison terms and paroles it is essential to secure all possible information bearing upon applicants for parole; and necessarily much of the information thus obtained can be had only upon the understand-

ing that the persons furnishing the same will be protected and that the information imparted will be treated as confidential.''

■ So, in the case of complaints against members of the State Bar, it is essential to secure all possible information bearing thereon, and necessarily much of the information can only be had upon the understanding that the informant and the information will be treated as confidential. ■ In *City & County of San Francisco* v. *Superior Court* (1951), 38 Cal.2d 156 [238 P.2d 581], after referring to *Runyon* and other authorities holding certain information held by public agencies to be privileged, the court said (p. 162) : ''The foregoing and other cases demonstrate that the right of inspection may be curtailed in relation to communications or portions thereof where the public policy, enacted into our statutory law, demands that disclosure be prohibited. It has been well said by the United States Attorney General, now Justice Robert Jackson (40 Op.Atty.Gen. No. 8, April 30, 1941), that the concern should be to require the keeping of faith with confidential informants as an indispensable condition of future efficiency.'' See also *People* v. *Pearson*, 111 Cal.App.2d 9, 24 [244 P.2d 35], where it was held that papers of a sheriff's department vice squad were not open to public inspection. ''Public policy requires that documents in the sheriff's office relating to law enforcement be treated as confidential . . . The contents of such documents are not to be divulged by their custodian when their secrecy would serve the public interest.''

*City & County of San Francisco* v. *Superior Court, supra,* 38 Cal.2d 156, 161, held that where it is shown that a governmental agency was able to obtain information only upon the understanding that the persons giving the information would be protected and their communications treated as confidential, the information would be privileged within section 1881. Thus the report of the National Conference of Bar Examiners as well as information given by clients and others only upon the assurance that such information would be held confidential is privileged. ■ But the privilege under section 1881 is broader than that. It applies to all information given the State Bar in connection with complaints against its members. The privilege is not of the attorney alone but of the State Bar. ■ So far as the attorney's privilege is concerned, he waives it when, as in this case, he places his reputation as an attorney in issue. But his waiver does not affect the privilege of the State Bar acting for itself and the public.

Section 6086, Business and Professions Code, provides : ''The

board of governors, subject to the provisions of this chapter, may by rule provide the mode of procedure in all cases of complaints against members.'' Section 6025 provides: ''Subject to the laws of this State, the board may formulate and declare rules and regulations necessary or expedient for the carrying out of this chapter.''[11]

 As said in *First Industrial Loan Co.* v. *Daugherty* (1945), 26 Cal.2d 545, 549 [159 P.2d 921], concerning the Commissioner of Corporations, to narrowly proscribe the rule making power of the State Bar ''would be to overlook one of the fundamental purposes of the policy of delegation of powers and to deprive the Legislature and the people of the state of one of the major benefits thereof. The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others.''

Pursuant to the powers conferred by sections 6086 and 6025, the State Bar adopted rules of procedure. Among these is rule 8, which provides, in effect, that the preliminary investigation shall not be made public and that all files, records and proceedings of the board are confidential and no information concerning them can be given without order of the board or unless disciplinary action is taken against the attorney accused.[12] Rule 8 is not an absolute bar but permits disclosure

---

[11]The chapter referred to in both of these sections embraces the State Bar Act and includes sections 6000 to 6154.

[12]The text of rule 8 is in part: ''The preliminary investigation provided for by these rules shall not be public.

''Unless otherwise ordered by the board or requested by the respondent, the hearing of a formal disciplinary proceeding before a committee shall not be public.

''Except when ordered by the board, and except as provided in rule 9 hereof, no information concerning the pendency or status of a preliminary investigation or formal proceeding shall be given unless and until a recommendation of the board is filed with the clerk of the Supreme Court or a public reproval shall have been administered by the board, except to members of the board, officers of the State Bar and their assistants, the members of the local administrative committee hearing the matter, the examiner, the respondent and his counsel.

''The files and records of all preliminary investigations and formal proceedings are the property of the State Bar and are confidential and no information concerning them and the matters to which they relate shall be given to any person except upon prior order of the Board or as in these rules provided.

''Unless otherwise ordered by the board, information regarding members of the State Bar which may have been secured by investigators of the State Bar, whether in the course of investigation in a disciplinary proceeding or in any other matter, shall not be made available or disclosed to prosecuting or other authorities. . . .''

upon order of the Board of Governors. It would appear that as hereinbefore pointed out, both the public and the members of the State Bar benefit from privilege attaching to the disciplinary proceedings.

■ Rule 8, in effect, reserves to the Board of Governors the right to release its information when it deems such release to be in the public interest. This limitation in nowise affects the right of the Board of Governors to make its information privileged. ■ As to all of the confidential communications made privileged by section 1881, Code of Civil Procedure, there is a right in someone or ones to waive the privilege. Thus, a husband and wife may waive their privilege, a client may waive the attorney and client privilege, a confessant, a patient, a publisher, editor or reporter may waive his respective privilege, and a public officer, when in his judgment the public interest would not suffer, may disclose communications made to him in official confidence.

In *United States* v. *Proctor & Gamble Co.* (1958), 356 U.S. 677 [78 S.Ct. 983, 2 L.Ed.2d 1077], the court upheld the policy of not permitting discovery to apply to federal grand jury proceedings where no true bill was returned. ■ One of the reasons given for not disclosing the testimony is equally applicable to State Bar disciplinary proceedings, that is, "to encourage all witnesses to step forward and testify freely without fear of retaliation . . . The grand jury as a public institution serving the community might suffer if those testifying knew that the secrecy of their testimony would be lifted tomorrow." (P. 682.) The court then went on to say that the indispensable secrecy of grand jury proceedings "must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." (P. 682.)

■ As said in that case, "Modern instruments of discovery serve a useful purpose . . . They together with pretrial procedures make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent . . . Only strong public policies weigh against disclosure." (P. 682.) No showing has been made in our case which would overcome the strong public policy being carried out by State Bar rule 8. *United States* v. *Proctor & Gamble Co.*, 180 F.Supp. 195, in its opinion rendered December 10, 1959, referred to the above mentioned case, 356 U.S. 677, and refused to order the grand jury testimony to be made available for the defendants except as to the

testimony of a deceased witness who had given one of the defendants a summary of his grand jury testimony. In a supplemental opinion, December 10, 1959, 180 F.Supp. at page 207, the court explained its reasons for permitting disclosure of the full testimony of the witness. It stated that the situation was "unusual, not to say unique" (p. 208) because of the fact that the witness whose information was of great importance in the case had given a 51-page summary of his testimony was now deceased and unable to be examined. Obviously the situation in our case cannot be compared to the unusual situation there as to the deceased witness. Our situation is more comparable to that of the other witnesses before the grand jury in that case, disclosure of whose testimony was denied.

Rule 8 falls within the power specially conferred upon the State Bar by section 6025 as being a regulation "necessary or expedient for the carrying out of this chapter." (See *First Industrial Loan Co.* v. *Daugherty, supra,* 26 Cal.2d 545, 549; *Viner* v. *Civil Service Com.,* 59 Cal.App.2d 458, 465 [139 P.2d 88].)

Section 6001, *supra,* provides: "No law of this State restricting or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies . . . shall be applicable to the State Bar, unless the Legislature expressly so declares." Therefore, the so-called "open meetings" and "public records" laws applicable to specific state boards and state agencies (see e.g., Stats. 1957, ch. 2170-2235; Stats. 1959, ch. 842-847, 849-862) do not apply.

Rule 8 recognizes that there may be situations in which, where the public interest would not suffer, the interest of justice might require that a limited disclosure be made of information received by the State Bar. See *United States* v. *Proctor & Gamble Co., supra,* 356 U.S. 677, where, although denying the use of a grand jury transcript where no true bill was returned, at discovery level, the court indicated that the information might be made available at the trial to refresh recollection or impeach witnesses.

As stated, this is primarily the privilege of the State Bar. It is not a party to the litigation and is asserting no rights, which in the interests of fairness would require it to divulge information. In the interest of the public, the State Bar's need for secrecy outweighs the litigant's need for information.

574

4. (b) *Where private reproval is imposed.*

The return of the State Bar states that its "public records" show that Cappa has never been *publicly* disciplined or reproved by the Board of Governors. When "private" reproval of an attorney is made, such fact does not appear in the public records of the State Bar. The latter's position is that the information on which it is based should remain confidential. The interrogatories the State Bar and Hayes declined to answer, although not specifically asking for information concerning a private reproval, if any, of Cappa, are broad enough to request information on that subject. ▮▮▮ It would appear that information resulting in a private reproval would and should not have the ultimate confidentiality of information which leads to no disciplinary action. A private reproval is an official act of the board, as much as a public reproval. It means either that some charge brought against the member has been determined to be well founded, or that some conduct warranting reproval has been disclosed. ▮▮▮ If the information is relevant there is no reason that in a proper case such information should not be available by discovery. In such case the public interest when weighed against the interest of the one desiring discovery would not suffer. ▮▮▮ An attorney who has so conducted himself as to merit a private reproval must expect that in a proper situation the facts upon which the reproval was based may be brought to light. Persons giving the information must realize that, just as when public disciplinary action follows, their information is subject to release, so it is when private disciplinary action is taken.

Section 6078, Business and Professions Code, gives the Board of Governors express power to discipline members of the State Bar by private as well as public reproval. Section 6081 requires that "any decision recommending the disbarment or suspension from practice" of a member be reported to the Supreme Court. The State Bar argues from this fact that the Legislature intended that privilege attaches in all situations except only disbarment or suspension. Yet State Bar rule 42 states: "The fact that a member has been *publicly reproved* by the Board of Governors shall be published in the State Bar Journal, and may otherwise be made public together with the reasons therefor." (Emphasis added.) ▮▮▮ The public interest does not require complete confidentiality when the conduct of the attorney merits condemnation even though the expression of condemnation be in minor form, that is, private. ▮▮▮ Rule 42 also provides: "When a private

reproval is administered no publicity shall be given to such action of the board, except that the complaining witness, examiner and trial committee shall be advised of the board's action." This is a salutary rule, but should not prevent discovery in a proper case. The State Bar indicates that in the case of a private reproval it usually does not keep or preserve a record of the "complaint," no statute or rule requiring it to do so. Obviously, in discovery the State Bar can only give such information as it may have. At least, it probably has a record of the fact of private reproval and the name or names of the person or persons upon whose "complaint" the private reproval was based.

Thus, the Chronicle is entitled to a statement from the State Bar as to whether or not Cappa has received a private reproval, and if so, the information upon which it was based.

5. *Discretionary Protective Order.*

 Section 2019, subdivision (b) (1), Code of Civil Procedure, provides that the trial court may for good cause shown refuse to allow "certain matters" to be inquired into, or "may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." This section gives the court judicial discretion in determining what matters should not be disclosed on deposition (see *Singer* v. *Superior Court, ante,* pp. 318, 327 [5 Cal.Rptr. 697, 353 P.2d 305]; *Heffron* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 709 [339 P.2d 567]), somewhat akin to the discretion lodged in the court in requiring the production of books, documents or other papers for inspection by an adverse party. (See *Adams* v. *Superior Court* (1957), 49 Cal.2d 427, 430 [317 P.2d 938].) Petitioners have failed to show in what manner the court abused the discretion given by section 2019, subdivision (b) (1), in refusing to permit the State Bar files to be opened to their inspection, at least in the investigational stage of the lawsuit. However, to determine the questions raised here solely upon the exercise of discretion by the trial court at this stage of the proceeding would merely postpone to a later date the ultimate determination of the question which would have to be met. For that reason we have considered herein the other questions raised.

The alternative writ is discharged. The petition for a peremptory writ of mandamus is denied in all respects save that a limited peremptory writ shall issue requiring the respondent court to modify its minute order limiting the depositions of the

intended deponents, the State Bar and Jack A. Hayes, secretary thereof, to require the said deponents to give the Chronicle the information upon which a private reproval was administered to Cappa, if any such reproval there was. Each party shall bear its own costs.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.