SHORES, Justice.
This is a petition for writ of mandamus or, in the alternative, petition for writ of prohibition. The petition arises in the context of a defamation case in which Dr. William H. Rudder sued Universal Communications Corporation (owners of WALATY in Mobile) and Glenda Webb (an investigative reporter for WALA). Dr. Rudder, a Mobile psychiatrist, filed a libel and invasion of privacy lawsuit against WALA and Webb, based upon television broadcasts on February 13 and 14, 1984, that dealt with the subject of abusive prescriptive drug practices. Part of those broadcasts included reports on an investigation of Dr. Rudder and another Mobile physician, Dr. Socrates Rumpanos, by the Alabama State Board of Medical Examiners relative to their prescribing dexedrine to Mobile County District Attorney Chris Galanos. Dr. Rudder claims that these news stories defamed him and that his right of privacy was invaded, and he seeks $2 million in compensatory and punitive damages.
WALA and Webb filed a motion to have Dr. Rudder produce all of his medical or psychiatric records concerning the treatment of Galanos, including records relative to prescriptions he wrote for dexedrine for Galanos. Through his attorney, Galanos asserted his psychiatrist-client privilege under Code 1975, § 34-26-2. Galanos had previously made a limited waiver of this privilege during the investigation of Dr. Rudder by the Board of Medical Examiners. Under the Board’s own rules and regulations, Dr. Rudder’s records that were used in its investigation are privileged and confidential and unavailable to the public. Galanos is not a party to this suit. Dr. Rudder refuses to turn over his records to WALA and Webb.
The trial court overruled Dr. Rudder’s objection to the request for production and denied his motion for a protective order. The trial judge ruled that the documents in question are relevant and material to the defendants’ defense of truth, that the psychiatrist-patient privilege gives way to the right grounded in the First Amendment to the United States Constitution, and that Galanos had waived any privilege he may have had concerning these records when he allowed their production to the State Board of Medical Examiners without first applying to the circuit court for a protective order.
Dr. Rudder seeks a writ of mandamus directed to the trial judge commanding him *413 to vacate his order overruling Dr. Rudder’s objection to defendants’ request for production of documents and denying Dr. Rudder’s motion for a protective order and commanding him to sustain Dr. Rudder’s objection and grant his motion, or in the alternative, a writ of prohibition prohibiting him from overruling the objection and denying the motion. The documents in issue are Dr. Rudder’s medical records pertaining to District Attorney Chris Galanos.
Petitioner Rudder contends that Galanos has not waived his privilege. We agree. Only the person entitled to claim an evidentiary privilege can waive that privilege by filing a lawsuit. See Mull v. String, 448 So.2d 952 (Ala.1984). Galanos is not a party to the present lawsuit. Also, Galanos did not waive his privilege by consenting to Dr. Rudder’s production of his medical records to the Board of Medical Examiners and testimony before the Board for the reason that the disclosures to the Board were themselves privileged and confidential communications. “Waiver does not result as to disclosures which are themselves privileged communications.” Jones on Evidence, Vol. 3, § 21:2, at 747 (6th ed. 1972).
Having determined that Galanos has not waived his privilege, we now must decide whether, under the facts of this case, the privilege should be recognized or disregarded.
Section 34-26-2, Ala.Code 1975, entitled Confidential relations and communications between licensed psychologists and psychiatrists and their clients, provides:
“For the purpose of this chapter, the confidential relations and communications between licensed psychologists and licensed psychiatrists and clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.”
It is not disputed that the medical records, created during the psychiatrist-patient relationship, are included in the confidential relationship and are also privileged. See Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973); 10 A.L.R.4th 552 Physician-Patient Privilege as Extending to Patient’s Medical or Hospital Records (1981).
Statutes such as § 34-26-2 are intended to inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and are thus designed to promote the efficacy of the physician’s advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community. See 81 Am.Jur.2d Witnesses § 231 at 262 (1976); Annot., 44 A.L.R.3d 24 Privilege, in Judicial or Quasi-judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient (1972).
“[A] psychiatrist must have his patient’s confidence or he cannot help him. ‘The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say — and all that the psychiatrist learns from what they say — may be revealed to the whole world from a witness stand.’ ”
Taylor v. United States, 222 F.2d 398, 401 (D.C.Cir.1955), quoting Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272.
The Alabama Rules of Civil Procedure recognize the importance of preserving confidential relationships and confidential information arising therefrom, by providing that privileged matters are not subject to discovery:
“RULE 26. GENERAL PROVISIONS GOVERNING DISCOVERY.
[[Image here]]
*414 “(b) Scope of discovery. ... [T]he scope of discovery is as follows:
“(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." (Emphasis added)
McCormick on Evidence, § 72 at 171 (1984), notes that evidentiary privileges do not aid in the ascertainment of truth, but are justified because they protect interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.
We also recognize that the discovery rules are to be broadly and liberally construed. Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 310 So.2d 210 (1975), citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). This broad and liberal construction is intended to promote the philosophy of the rules, “which is to permit full discovery so as to save time, effort, and money and to expedite the trial and with a view of achieving justice for each litigant.” Van Buren v. Dendy, 440 So.2d 1012, 1014 (Ala.1983). “Modern instruments of discovery serve a useful purpose. ... They together with pretrial procedures make a trial less a game of blind man’s buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. ... Only strong public policies weigh against disclosure.” United States v. Procter & Gamble Co., 356 U.S. 677, at 682-83, 78 S.Ct. 983, at 986, 2 L.Ed.2d 1077 (1958). Thus, at issue in the present case are two competing interests: the public’s interest in protecting the psychiatrist-patient privilege and the interest in not handicapping defendants in defamation cases in discovery efforts in order to prepare their defense.
As recognized in Rule 26(b)(1), supra, and in Rule 26(c), the right of discovery is not unlimited, and the trial court has the power to prevent its abuse by any party. Van Buren v. Dendy, citing Assured Investors Life Ins. Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala. 1978).
“Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....”
A.R.Civ.P., Rule 26(c).
Our research did not reveal the existence of any case raising the precise issue now before us — whether a news media defendant, in defense of an action for defamation brought by a psychiatrist (or other physician), has a right to discover that doctor’s privileged medical records pertaining to one of his patients. Chronicle Publishing Co. v. Superior Court, 54 Cal.2d 548, 7 Cal.Rptr. 109, 354 P.2d 637 (1960), is, however, a somewhat analogous case.
In that case, an attorney brought an action against the defendant newspaper for libel based on an article it published which plaintiff claimed injured him in his professional reputation. The attorney contended that his professional reputation was good and that he had never been guilty of any misconduct. The newspaper sought discovery from the State Bar to ascertain if complaints, not resulting in any private or public discipline, had ever been filed, and whether any investigations of the plaintiff had ever taken place. The State Bar sought an order limiting discovery by excluding inquiry into information contained in the confidential files of the State Bar. It was urged that the matters sought to be excluded were privileged and that the public interest would suffer by disclosure.
The trial court granted the motion for a protective order. On petition for mandamus brought by the newspaper, the California Supreme Court held that the information sought by the defendant newspaper was relevant but privileged, as provided by California statute. The court cited a discovery statute similar to Alabama’s Rule *415 26(b), supra, prohibiting discovery of privileged matters. The State Bar argued that the free communication of information on a privileged, confidential basis was necessary for the proper functioning of the disciplinary procedures. The Supreme Court agreed, stating that “in the case of complaints against members of the State Bar, it is essential to secure all possible information bearing thereon, and necessarily much of the information can only be had upon the understanding that the informant and the information will be treated as confidential.” Chronicle Publishing Co. v. Superior Court, 54 Cal.2d at 559, 7 Cal.Rptr. at 120, 354 P.2d at 648. In upholding the trial court’s protective order, the Court said: “In the interest of the public, the State Bar’s need for secrecy outweighs the litigant’s need for information.” Chronicle Publishing Co., supra, 54 Cal.2d at 562, 7 Cal.Rptr. at 123, 354 P.2d at 651.
The public interest is served by encouraging individuals to seek help and treatment for both mental and physical illness. Without the assurance of confidentiality, many individuals would resist seeking help, fearing the potentially humiliating and embarrassing exposure of their private lives. We recognize that both interests are important — -the interest in preserving the psychiatrist-patient privilege and the interest in promoting full and thorough discovery. Under the facts of the instant case, the latter must yield to the former.
Defendants WALA and Webb argue that a third and paramount interest is involved — the right to free expression guaranteed by the First Amendment. The trial court agreed with defendants and denied Dr. Rudder’s motion for protective order. The trial court held that “the psychiatrist-patient privilege gives way to the right grounded in the First Amendment to the United States Constitution.” Defendants specifically contend that the First Amendment to the United States Constitution “grants a privilege to the media as a defense to libel actions of this sort,” citing Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); and New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Furthermore, they argue that if they “are prohibited from getting Dr. Rudder’s records concerning Mr. Galanos, then the privilege predicated upon the United States Constitution is completely emasculated.” Under the facts of the present case, we disagree. First, a brief review of Hepps, Gertz, and Sullivan, is in order.
The constitutional protection against liability for defamation enunciated in Gertz and Sullivan can be stated as follows: Where a plaintiff is a public official or a public figure, the media defendant will escape liability unless the plaintiff proves publication of defamatory falsehood with actual malice — that is, with knowledge that it was false or with reckless disregard of whether it was false or not. Gertz held that private individuals were not required to show “actual malice” in a libel suit against the media, and that “so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.”[1] 418 U.S. at 347, 94 S.Ct. at 3010. The recent United States Supreme Court opinion in Hepps holds that a private figure plaintiff who seeks to recover damages against a media defendant for defamatory speech on a matter of public concern must also show that the statements at issue are false. The Court held that “the common law’s rule on falsity — that the defendant must bear the burden of proving truth— must similarly fall here to a constitutional *416 requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.” 475 U.S. at —, 106 S.Ct. at 1563.
We recognize that the courts of this State are bound by the constitutional principles enunciated in these Supreme Court cases. In actions for defamation, there must be an initial determination by the trial judge in regard to the status of the allegedly defamed person as a public official, a public figure, or a private individual. Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980), cert. denied, 449 U.S. 1181, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). Furthermore, where it is determined that a private individual is alleging defamation, there must be a determination of whether the defamatory speech involves a matter of public concern. Philadelphia Newspapers, Inc. v. Hepps, supra. These determinations are questions of law for the trial judge. Fulton. These issues must be resolved first, because the manner of their resolution determines what elements of proof are necessary for recovery. Mobile Press Register, Inc. v. Faulkner, 372 So.2d 1282 (Ala.1979), citing New York Times Co. v. Sullivan, supra.
Each of these cases from the United States Supreme Court speaks to the burden of proof in defamation cases. None of them extends to the media a constitutional right to information not otherwise available to others. Although one hears assertions of the “media’s right to know,” we have found no reference to a constitutional “right to know” in any decision of the Supreme Court of the United States. One state court has had occasion to address this point. The Supreme Court of Washington in Rhinehart v. Seattle Times Co., 98 Wash.2d 226, 654 P.2d 673 (1982), affirmed, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), is instructive. That case involved a suit for defamation and invasion of privacy against a defendant newspaper. The newspaper challenged the trial court’s granting of a protective order, sought by the plaintiff, on First Amendment grounds. The Supreme Court of Washington, in affirming the protective order against a charge that it violated the First and Fourteenth Amendments, stated:
“Under the federal constitution, persons engaged in the business or profession of publishing or otherwise communicating with the public are entitled to no greater protection than citizens who are not so engaged. Their right of access to information within the control of the government is the same. Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (access to jails); Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (access to tapes not placed in evidence at trial); Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (access to prisons and inmates). See Estes v. Texas, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring).
“Nor is there any basis for holding that a publisher, when he is a party to litigation, enjoys a greater immunity from protective orders than do other litigants, as the defendants would have us hold. Neither the first and fourteenth amendments to the United States Constitution nor article 1, section 5 of our state constitution makes any distinction among citizens in conferring their protections.”
Rhinehart v. Seattle Times Co., 98 Wash.2d at 229-30, 654 P.2d at 676.
While freedom of the press must be strongly defended, it does not include access to information not generally available to members of the public. See Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974). Information recognized as privileged is not available to the public. As previously discussed, there is an important societal interest in preserving the confidentiality of the psychiatrist-patient relationship. There may be instances where the media defendant would be allowed to discover privileged communications, but that case is not now before us.
We recognize the dilemma which WALA and Webb anticipate. The plaintiff will testify that the publication by them was false and they will be called upon to produce evidence to the contrary — the best of *417 which is in the plaintiffs possession under a claim of physician/patient privilege. However, for the present, WALA and Webb have failed to show that any constitutional right has been violated by the retention of the privilege legislatively extended to Galanos’s medical records, and they have also failed to demonstrate that they would be unduly handicapped in defending this lawsuit. To the contrary, representatives of WALA repeatedly stated that the broadcasts in issue were “backed up by facts,” that “we made clear that everything we said was factual,” and that “all the claims [made by WALA-TV] were substantiated with facts.” Thus, defendants have acknowledged that they have other non-privileged evidence available to them to defend against Dr. Rudder’s allegations.
The protection of a patient’s and society’s interest in preserving the confidentiality of the psychiatrist-patient relationship is of sufficient importance to generally warrant exclusion from discovery. However, this psychiatrist-patient privilege may not in all cases be an impenetrable shield. See, e.g., D. v. D., 108 N.J.Super. 149, 260 A.2d 255 (1969), where the court observed that when the custody of children was at issue, the welfare of the children was paramount to the rights of the parents to invoke a statutory privilege against the admission of psychotherapist-patient communications.
From the record before us, we cannot ascertain whether the trial court has determined that Dr. Rudder is a private or a public figure under Fulton, supra. Until it does so, we cannot state what elements of proof are necessary for his recovery, as delineated by Hepps, Gertz, and Sullivan. WALA and Webb contend that, assuming Dr. Rudder is a private individual (without conceding that he is), the broadcasts in issue were of public concern; if so, this fact, in accordance with Hepps, would cast on Dr. Rudder the burden of proving that the publications were false. We agree that the subject of the broadcasts is of public concern; therefore, Dr. Rudder’s burden of proof is a heavy one, and it is one he must bear without the use of the medical records, because the privilege prevents him too from utilizing them.
The petition for writ of mandamus is granted, and the trial court is ordered to grant Dr. Rudder’s motion for a protective order.
WRIT GRANTED.
MADDOX, JONES, ALMON, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and HOUSTON and STEAGALL, JJ., dissent.

. See Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), where this Court held that a private individual must prove “traditional malice," as distinguished from the Sullivan, "actual malice,” in a libel suit against a media defendant. Traditional malice "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like ... or by the violence of the defendant’s language, the mode and extent of publication, and the like.” Fulton, 388 So.2d at 538, quoting Kenney v. Gurley, 208 Ala. 623, 95 So. 34 (1923).